**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

WINVIEW IP HOLDINGS, LLC, a Delaware Limited Liability Company,

        Plaintiff,

v.

FANDUEL, INC., a Delaware corporation, FANDUEL GROUP, INC., a Delaware corporation, FANDUEL GROUP PARENT LLC, a Delaware corporation, and BETFAIR INTERACTIVE US LLC, a Delaware corporation.

        Defendants.

C.A. No. 3:21-cv-13807-GC-JTQ

**JURY TRIAL DEMANDED**

**ORAL ARGUMENT REQUESTED**

**Motion Date: January 5, 2026**

*Document Filed Electronically*

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT PURSUANT TO
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

Katherine A. Escanlar
(kescanlar@saiber.com)
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, New Jersey 07940
Tel: (973) 845-7720
Fax: (973) 622-3349

Richard Berman
(Richard.Berman@afslaw.com)
Janine A. Carlan
(Janine.Carlan@afslaw.com)
Kevin J. Spinella
(Kevin.Spinella@afslaw.com)
Margherita A. Capolino
(Margherita.Capolino@afslaw.com)
**ARENTFOX SCHIFF LLP**
1717 K Street, NW
Washington, DC 20006-5344
Tel: (202) 857-6000
Fax: (202) 857-6395

*Attorneys for Defendants FanDuel, Inc.,
FanDuel Group, Inc., FanDuel Group Parent
LLC, and Betfair Interactive US LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................ 1

I.    BACKGROUND ....................................................................................................... 3

II.   LEGAL STANDARD................................................................................................ 5

III.  ARGUMENT............................................................................................................. 6

    A.    WinView's Infringement Allegations Should be Dismissed for the '543 Patent (Counts I and II)............................................................................................ 6

        1.    WinView fails to allege a material limitation of the newly asserted claim 118........................................................................................................ 7

        2.    WinView's infringement allegations against FD Casino and FD Racing should be dismissed. .................................................................... 10

    B.    WinView's Claims for Willful (Counts I-IV), Induced, and Contributory Infringement (Counts II and IV) as to the '543 and '988 Patents Should be Dismissed. ........................................................................................................ 14

        1.    WinView has not plausibly pleaded FanDuel's knowledge of the Asserted Patents or of the alleged infringement. .................................... 15

            a.    The SAC's pre-suit allegations are inadequate as a matter of law........................................................................................................ 15

            b.    The SAC's post-suit allegations cannot salvage willfulness or indirect infringement. ........................................................... 20

        2.    The induced infringement claims independently fail for lack of specific intent. ................................................................................... 21

        3.    The contributory infringement claims fail for want of facts showing a material component lacking substantial non-infringing uses................. 23

    C.    Dismissal with Prejudice Is Warranted as to the '543 Patent and the Willful, Induced, and Contributory Infringement Claims .................................................. 24

CONCLUSION................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)............................................................................................................5, 6

*Bayer Healthcare LLC v. Baxalta Inc.,*
  989 F.3d 964 (Fed. Cir. 2021)..........................................................................................14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)...............................................................................................6, 11, 24

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.,*
  681 F.3d 1323 (Fed. Cir. 2012).........................................................................................19

*Bio-Rad Laby's, Inc. v. Int'l Trade Comm'n,*
  998 F.3d 1320 (Fed. Cir. 2021).........................................................................................14

*Bot M8 LLC v. Sony Corp. of Am.,*
  4 F.4th 1342 (Fed. Cir. 2021) ...............................................................................7, 10, 12, 13

*Bruni v. City of Pittsburgh,*
  824 F.3d 353 (3d Cir. 2016)...............................................................................................16

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997).............................................................................................25

*ChargePoint, Inc. v. SemaConnect, Inc.,*
  920 F.3d 759 (Fed. Cir. 2019)............................................................................................25

*Clayton v. Morgan,*
  501 F. App'x 174 (3d Cir. 2012) .......................................................................................24

*Cleveland Med. Devices Inc. v. ResMed Inc.,*
  696 F. Supp. 3d 4 (D. Del. 2023).......................................................................................17

*Dali Wireless, Inc. v. Corning Optical Commc'ns LLC,*
  No. 20-cv-06469-EMC, 2022 WL 1426951 (N.D. Cal. May 5, 2022)..........................15, 19

*Data Engine Techs. LLC. v. Google LLC,*
  906 F.3d 999 (Fed. Cir. 2018)............................................................................................16

*DraftKings Inc. v. WinView Inc.,*
  IPR2022-01351 (P.T.A.B. Jan. 29, 2024)..........................................................................3, 19

*Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*,
  No. 14-1430-LPS-CJB, 2015 WL 5725768 (D. Del. Sept. 29, 2015) .....................................17

*FanDuel, Inc. v. WinView, Inc.*,
  IPR2022-01306 (P.T.A.B. Jan. 29, 2024)...............................................................................3

*FanDuel, Inc. v. WinView, Inc.*,
  IPR2022-01307 (P.T.A.B. Jan. 29, 2024)............................................................................1, 3

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................................................25

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)....................................................................................23

*GoTV Streaming, LLC v. Netflix, Inc.*,
  No. 22-cv-07556, 2023 WL 2627016 (C.D. Ca. Feb. 16, 2023) ..............................................20

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*,
  222 F.3d 951 (Fed. Cir. 2000)......................................................................................16

*iFIT Inc. v. Peloton Interactive, Inc.*,
  No. 21-507-RGA, 2022 WL 609605 (D. Del. Jan. 28, 2022)...................................................16

*Inc. v. SetSail Techs., Inc.*,
  2021 WL 2333880 (N.D. Cal. June 8, 2021) ........................................................................24

*Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*,
  No. 3:16-cv-263 RLM-MGG, 2018 WL 345767 (N.D. Ind. Jan. 10, 2018) ..............................18

*Marangos v. Swett*,
  341 F. App'x 752 (3d Cir. 2009) ...................................................................................6

*Memory Integrity, LLC v. Intel Corp.*,
  144 F. Supp. 3d 1185 (D. Or. 2015) ................................................................................22

*Microsoft Corp. v. DataTern, Inc.*,
  755 F.3d 899 (Fed. Cir. 2014)......................................................................................22

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012)................................................................................18

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
  No. 19-1031-RGA-SRF, 2019 WL 5626647 (D. Del. Oct. 31, 2019)...............................15, 16

*NovaPlast Corp. v. Inplant, LLC*,
  No. 23-7396 (KM) (JBC), 2021 WL 389386 (D.N.J. Dec. 6, 2021) .................................6, 10

*Otsuka Pharm. Co. v. Zydus Pharms. USA*,
  151 F. Supp. 3d 515 (D.N.J. 2015), *aff'd*, 694 F. App'x 808 (Fed. Cir. 2017) .......................22

*Oy Ajat, Ltd. v. Vatech Am., Inc.*,
  No. 10-cv-4875-PGS, 2011 WL 1458052 (D.N.J. Apr. 14, 2011) ..........................................22

*Secured Mail Sols., LLC v. Advanced Image Direct, LLC*,
  No. SACV 12-01090-DOC, 2013 WL 8596579 (C.D. Cal. Jan. 30, 2013)..............................20

*Straight Path IP Grp., v. Vonage Holdings Corp.*,
  No. 14-cv-502-JLL, 2014 WL 3345618 (D.N.J. July 7, 2014).........................................22, 23

*Uniloc v. Zenpayroll, Inc.*,
  No. 19-cv-1075-CFC-SRF, 2021 WL 271800 (D. Del. Jan. 27, 2021) ...................................10

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009)...............................................................................................21

*WinView Inc. v. DraftKings Inc.*,
  No. 21-13405 (GC) (JTQ), 2025 WL 1908757 (D.N.J. July 11, 2025).......................... *passim*

*ZapFraud Inc. v. Barracuda Networks, Inc.*,
  528 F. Supp. 3d 247 (D. Del. 2021)..........................................................................14, 20, 21

*Zoetis LLC v. Roadrunner Pharmacy, Inc.*,
  No. 15-cv-3193, 2016 WL 755622 (D.N.J. Feb. 25, 2016) ....................................................22

**Statutes**

35 U.S.C. § 271(b) ........................................................................................................................21

**Rules**

37 C.F.R. § 1.11(a)........................................................................................................................16

**INTRODUCTION**

WinView IP Holdings, LLC's ("WinView") Second Amended Complaint ("SAC") (Dkt. 117) does not plausibly allege direct, willful, induced, or contributory infringement of U.S. Patent Nos. 10,721,543 (the "'543 Patent") and 10,806,988 (the "'988 Patent") (the "Asserted Patents"). In four years and three complaints, WinView has repeatedly failed to state plausible claims for relief. Most recently, this Court granted Defendant FanDuel, Inc.'s ("FanDuel") leave to move to dismiss the First Amended Complaint ("FAC") (Dkt. 100) and, in a related action C.A. No. 3:21-cv-13405 ("*DraftKings I*"), dismissed a similar complaint (Dkt. 79)—confirming the same pleading defects.

Rather than defend its deficient FAC, WinView filed its SAC (Dkt. 117). Yet despite extensive revisions, the SAC still fails to cure the defects that led this Court to dismiss a nearly identical complaint in *DraftKings I. Id.* Instead, WinView has doubled down on inadequate allegations by baldly accusing additional FanDuel products, asserting new patent claims without the factual matter necessary to state a claim, relying on legally insufficient post-suit conduct to allege willful and indirect infringement, and dragging FanDuel-related entities as new parties into the case.[1]

As discussed in further detail below (III.A.), WinView's infringement allegations for the '543 Patent are deficient and should be dismissed. WinView now asserts infringement of claim 118 of the '543 Patent only after the PTAB invalidated the claims WinView originally asserted.[2] The SAC confirms why WinView avoided claim 118 until now: unlike the previously asserted claims, claim 118 requires that "assets are grouped into a set of necessary assets and a set of

---

[1] *See id.; DraftKings I* third amended complaint (Dkt. 89) which suffers from the same pleading defects, as explained in DraftKings' opposition (Dkt. 119) and reply (Dkt. 121).
[2] *See FanDuel, Inc. v. WinView, Inc.*, IPR2022-01307, Paper 21 (P.T.A.B. Jan. 29, 2024) (finding challenged claims 1, 2, 9, 14–16, 20, 21, 23, 24, 26, 27, 31–33, 40, 41, 43, and 49 unpatentable).

preferred assets." WinView nowhere alleges that any accused FanDuel product—much less the multiple, distinct products it names—implements the requisite grouping of assets into "necessary" and "preferred" sets *in the manner that the claim requires*. Absent well-pled facts plausibly showing that FanDuel practices this specific limitation, WinView's infringement claim for the '543 Patent fails and should be dismissed in full.

At a minimum, WinView's infringement allegations for the '543 Patent should be dismissed as to the two products that WinView has accused for the first time in its SAC: (i) FanDuel Casino ("FD Casino") and (ii) FanDuel Racing ("FD Racing").[3] The SAC identifies no detailed facts explaining how either product purportedly meets any limitation of claim 118 and does not clearly identify the accused functionality or technology for those products. Such conclusory and threadbare allegations are facially insufficient and warrant dismissal.

WinView also fails to state claims for willful, induced, or contributory infringement. The SAC does not plausibly allege that FanDuel had pre-suit knowledge of the '543 or '988 Patent or any alleged infringement thereof. WinView's purported "knowledge" allegations largely predate the patents' issuance and therefore cannot establish awareness of the Asserted Patents or of infringement. Any allegations that post-date the patents' issuance also do not show knowledge of the Asserted Patents or awareness of any infringing acts, and thus cannot sustain willfulness, inducement, or contributory liability.

---

[3] WinView's FAC alleged two accused products: FanDuel Sportsbook and FanDuel Fantasy. WinView's isolated use of terminology "FanDuel Sportsbook & Casino" in its SAC and "FanDuel Picks" in its July 25, 2025, post-suit letter (*See* Declaration of Kevin J. Spinella in Support of Defendants' Motion to Dismiss Second Amended Complaint ("Spinella Decl."), Ex. 1) (and not included in its SAC) seem to represent copy and paste typographical errors carried over from the third amended complaint in *DraftKings I* (Dkt. 84).

WinView's actions after the Court granted DraftKings' prior motion to dismiss further underscore the weakness of its claims. Following the Court's ruling that WinView had not adequately pled pre-suit knowledge in *DraftKings I*, WinView sent FanDuel a letter accusing infringement of the same patents at issue in the earlier cases. *See* Spinella Decl., Ex. 1. But post-suit communications cannot retroactively supply the pre-suit knowledge necessary for willful or indirect infringement, for the reasons this Court already explained in *DraftKings I*. *See DraftKings I*, Dkt. 79 at 16-23.

WinView has had multiple opportunities to plead viable claims and has failed each time. Further amendment would be futile. The Court should dismiss with prejudice all claims relating to the '543 Patent (Counts I and II), all willful infringement claims relating to the '543 and '988 Patents (Counts I–IV), and all induced and contributory infringement claims relating to the '543 and '988 Patents (Counts II and IV) under Rule 12(b)(6).

## I.    BACKGROUND

WinView initiated this dispute by suing FanDuel for patent infringement on July 19, 2021. Dkt. 1. After amending its complaint, WinView asserted four patents: U.S. Patent Nos. 9,993,730 ("the '730 Patent"), 9,878,243 ("the '243 Patent"), the '543 Patent, and the '988 Patent. Dkt. 8. In parallel, WinView filed a lawsuit against DraftKings asserting the same four patents. *DraftKings I*, Dkts. 7, 26. FanDuel and DraftKings separately petitioned for *inter partes review* challenging the asserted claims of three of the four patents. Dkt. 45 at 2. In the interest of judicial efficiency, the parties jointly requested a stay pending the PTAB's validity determinations (*id.*), and the Court stayed and administratively terminated the case in September 2022. Dkt. 46. The PTAB subsequently invalidated all challenged claims of the three WinView patents.[4]

---

[4] *See DraftKings Inc. v. WinView Inc.*, IPR2022-01351, Paper 30 (P.T.A.B. Jan. 29, 2024); *FanDuel, Inc. v. WinView, Inc.*, IPR2022-01307, Paper 21 (P.T.A.B. Jan. 29, 2024); *FanDuel, Inc.*

On July 11, 2025, the Court granted DraftKings' motion to dismiss its latest amended complaint. *DraftKings I*, Dkt. 79. As relevant here, the Court dismissed WinView's direct infringement allegations for the '543 Patent claims that the PTAB invalidated, and rejected WinView's attempt to pivot to other, previously unasserted claims, holding that WinView failed to provide DraftKings adequate notice of alleged infringement of any non-invalidated '543 Patent claims. *Id.* at 11-16. The Court explained that a complaint centering its allegations on claims adjudicated as unpatentable, without additional description of how the accused products infringe the claimed invention, cannot provide the fair notice required. *Id.* The Court also dismissed WinView's claims against DraftKings for willful, induced, and contributory infringement. *Id.* at 16-23. It held that WinView's willfulness theory was deficient because the allegations predated issuance of the asserted patent and a party cannot be liable for willful infringement of a nonexistent patent. *Id.* at 17. The Court further found that WinView failed to plausibly plead knowledge of infringement where its allegations rested on patent applications and threadbare assertions about discussions between the parties. *Id.* The Court rejected WinView's contention that knowledge could be established by the filing of the complaint and subsequent amendments, concluding that, absent sufficient facts showing pre-suit knowledge of infringement, a willfulness claim based solely on post-suit knowledge cannot stand. *Id.* at 21. Because the standards for induced and contributory infringement likewise require knowledge of the patent and knowledge of infringement, the Court dismissed those claims as well. *Id.* at 22-23.

On November 13, 2025, more than four years after filing suit, WinView filed the SAC, seeking to expand the case by asserting previously unasserted claims of the two remaining patents

---

*v. WinView, Inc.*, IPR2022-01306, Paper 22 (P.T.A.B. Jan. 29, 2024). Subsequently, in accordance with a stipulation filed on December 16, 2024, the Court dismissed all claims related to two of the three patents, with prejudice. *DraftKings I*, Dkt. 65.

and by newly accusing two additional FanDuel products. Dkt. 117, ¶¶ 40, 114, 165. WinView's SAC is nearly identical to the latest amended complaint in the DraftKings case (*DraftKings I*, Dkt. 109-1). Specifically, instead of the previously asserted and invalidated claims 1 and 9 of the '543 Patent, WinView now asserts claim 118, and in place of claim 1 of the '988 Patent, WinView now asserts claim 64. *Id.* WinView also expands the accused products in the first action beyond FanDuel Sportsbook ("FD Sportsbook") and ("FD Fantasy") to add FD Casino and FD Racing for the first time. *Id.* Like the complaint the Court previously dismissed in *DraftKings I* (Dkt. 26) as well as its latest amended complaint (*DraftKings I*, Dkt. 89), WinView's SAC here does not plausibly plead pre-suit knowledge of the Asserted Patents or of the alleged infringement. Dkt. 117. The pleading alleges only that WinView and FanDuel discussed other patents and applications between 2017 and 2019. *Id.* ¶¶ 105-107. It does not allege that WinView identified the Asserted Patents to FanDuel after those patents issued or accused FanDuel of infringement before suit. *Id.* A post-suit letter sent four years after filing and two weeks after the Court dismissed WinView's willful and indirect claims in the DraftKings action does not cure these defects. *Id.* ¶ 111. The letter merely references the original complaint and FAC (*See* Spinella Decl., Ex. 1), and the Court in *DraftKings I* has already held that a complaint itself cannot supply the requisite knowledge for willful, induced, or contributory infringement. *DraftKings I*, Dkt. 79 at 16-23. For the same reasons DraftKings opposes WinView's latest amended complaint in *DraftKings I* (Dkts. 119 and 121), FanDuel does so here.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible on its face, a plaintiff must plead

5

facts that allow the court to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court must accept factual allegations as true, but legal conclusions are not entitled to the assumption of truth. *Id.* at 680. Likewise, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements[,]" are not entitled to the assumption of truth. *Id*. at 663; *see also Twombly*, 550 U.S. at 555 ("[F]ormulaic recitation of the elements of a cause of action will not do...."); *Marangos v. Swett*, 341 F. App'x 752, 755 (3d Cir. 2009) ("plausibility standard asks for more than a sheer possibility . .. " (quoting *Iqbal*, 556 U.S. at 678) (internal quotations omitted)).

### III.    ARGUMENT

#### A.    WinView's Infringement Allegations Should be Dismissed for the '543 Patent (Counts I and II).

WinView asserts that FanDuel infringes previously unasserted claim 118, but fails to ***detail sufficient facts*** supporting that FanDuel practices a necessary part of that claim: "sending only a second set of assets ... wherein the second set of assets are grouped into a set of necessary assets and a set of preferred assets." '543 Patent, 19:13-17; *see* Dkt. 117 ¶¶ 122-144. Because WinView still has not provided adequate notice of what it asserts infringes the '543 Patent, Counts I and II of the SAC should be dismissed. *See, e.g.*, *NovaPlast Corp. v. Inplant, LLC*, No. 23-7396 (KM) (JBC), 2021 WL 389386, at *7 (D.N.J. Dec. 6, 2021) ("Without ... facts relating the features of the accused products to the patent claims, there is no showing of an entitlement to relief.").

If the Court does not dismiss Counts I and II in their entirety (which FanDuel asserts that it should), the Court should at least dismiss WinView's allegation of patent infringement against FD Racing and FD Casino, which the SAC accuses for the first time in this case. WinView omits critical allegations necessary to state a claim in stretching to assert the '543 Patent against these additional products, which warrants dismissal at least as to those products.

### 1. WinView fails to allege a material limitation of the newly asserted claim 118.

WinView's infringement allegations for the '543 Patent (Counts I and II) should be dismissed in their entirety because the SAC fails to provide fair notice of what is accused for that patent. *See Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021); *WinView Inc. v. DraftKings Inc.*, No. 21-13405 (GC) (JTQ), 2025 WL 1908757 (D.N.J. July 11, 2025), at *5 (*DraftKings I*).

The SAC alleges that FD Sportsbook, FD Casino, and FD Racing infringe newly asserted claim 118 of the '543 Patent, which recites:

A method implemented on a server device comprising:

[a] sending a set of service-related information related to a location of the mobile Internet-connected computing device to an activity client, wherein the location determines the set of service related information to be loaded;

[b] receiving a selection of a service from the activity client to be utilized by a user;

[c] sending a set of service-specific information related to the service to the mobile Internet-connected computing device including:

[d] sending a list of assets to the mobile Internet-connected computing device;

[e] comparing the list of assets with a first set of assets;

***[f] sending only a second set of assets*** within the list of assets that are not already resident on the mobile Internet-connected computing device, ***wherein the second set of assets are grouped into a set of necessary assets and a set of preferred assets***; and

[g] executing an application related to the service within the activity client on the mobile Internet-connected computing device.

Dkt. 117, ¶¶ 114, 120.[5]

---

[5]    Emphases added throughout unless specified. Bracketed letters are included to identify claim limitations and are not part of the claim.

The SAC alleges that FanDuel "sends service specific information such as selection information to the customers' devices" such as a "mobile Internet-connected computing device, that are downloaded to the customer's devices." *Id.* ¶ 133. According to the SAC, "FanDuel sends lists of assets to user's devices which can be compared to the existing list of assets on the device or subsequent lists that are generated on the device." *Id.* ¶ 134. WinView alleges that there is "continuous communication of new assets not previously received" between FanDuel's servers and the user's device. *Id.* ¶ 135. The SAC alleges that "FD Sportsbook, FD Casino, and FD Racing compare the received list of assets against the assets already on the device." *Id.* ¶ 137. The SAC also alleges that FanDuel "send[s] a second set of assets that are not already on a customer's mobile computing device." *Id.* ¶ 135. While the SAC discusses sending "only a second set of assets … not already resident," "necessary assets, and "preferred assets" generally (*Id.* ¶¶ 139-143), at no point does the SAC describe in requisite factual detail that any of the accused products perform ***what the claim requires***: "send[] only a second set of assets ... wherein the second set of assets ***are grouped into*** a set of necessary assets and a set of preferred assets," as required by element [f] shown above. *See id*. Indeed, the SAC fails to provide fair notice as to how the "grouping" occurs and conclusorily conflates "necessary assets" with "updated odds information … to accept wagers" and "preferred assets" with "live stream videos" or "game scores and statistics." *Id.* ¶¶ 140-141. The SAC, while describing sending "different asset types" is silent as to how this "grouping" occurs. *Id.*

Having chosen to now assert a claim with this additional requirement (after the PTAB invalidated other claims without this element on the grounds that they were obvious), WinView cannot escape its obligation to provide FanDuel with fair and detailed notice of how the accused products plausibly infringe without addressing that additional claim requirement and claim

features.  The absence of persuasive factual allegations relating to that aspect of the claim is telling. WinView alleges that one of its "inventive concepts" is the "efficient technological management of assets on a mobile device [which] optimizes performance by ensuring that only the necessary assets for specific events are downloaded to users' devices." *Id.* ¶ 27. WinView touts how "the inventions address domain-specific problems inherent to on-line gaming systems and mobile devices." *Id.* ¶ 37. Claim 118 specifically requires an implementation based on a "second set of assets [that] are grouped into a set of necessary assets and a set of preferred assets." '543 Patent, 19:13-17. Notably, the SAC fails to provide any evidence that the variability of a user's wi-fi network functionality is congruent with any "grouping" of both "necessary" and "preferred assets," as claimed. *Id.* ¶ 143.

The SAC does not allege that assets are ***grouped*** into a set of necessary assets and a set of preferred assets. Instead, the SAC merely identifies that "live stream assets are updated only preferentially, depending on if the user's network is sufficiently stable and has high enough bandwidth to download it." *See Id.* ¶¶ 141. But this is irrelevant to whether and how assets are ***grouped when sent to a user's device*** (as the claim requires). *Id.* ¶ 120. Instead, the SAC provides conclusory allegations but does not provide detailed notice to FanDuel of what it accuses for the "grouping" feature of element [f], based on these paragraphs. While the SAC alleges that "the necessary and preferred assets are respectively used to provide mandatory odds and game state data used to execute wagering and also preferred assets used to execute live video streams," nothing in the SAC, even when considered as a whole and in the light most favorable to WinView, provides FanDuel with fair notice of what functionality the accused products have that perform the claimed functionality of ***grouping assets*** as claimed. *See Id.* ¶ 143.

9

Indeed, the requirement that the assets are "grouped" is particularly important, given that the claims of the '543 Patent that WinView previously asserted and were invalidated by the PTAB did not require any such grouping. Having already had other claims in the '543 Patent that do not require the claimed grouping invalidated, WinView may not assert claims that require "grouping" without pleading facts that plausibly allege that the accused products meet this grouping requirement. The failure to make those allegations is both notable and legally insufficient to state a claim. As the Federal Circuit has explained, "[t]he level of detail required in any given case will vary depending upon a number of factors, including … the ***materiality of any given element*** to practicing the asserted claim(s)." *Bot M8*, 4 F.4th at 1353

In *DraftKings I*, WinView cites *Miller Industries Towing Equipment Inc. v. NRC Industries* in its letter brief (*DraftKings I*, Dkt. 92 at 2), but that case explains (in denying the motion to dismiss), that a complaint must "identify how the accused product infringed on every element of at least one claim in each of the plaintiff's patents," 582 F. Supp. 3d 199, 203-04 (D.N.J. 2022). By contrast, in this case, WinView's SAC does not plead infringement of ***any*** claim of the '543 Patent because it omits non-conclusory allegations relating to the "grouping" ***the asserted claim requires***, which warrants dismissal of Counts I and II in their entirety. *See, e.g.*, *NovaPlast*, 2021 WL 389386, at \*7-8; *Uniloc v. Zenpayroll, Inc.*, No. 19-cv-1075-CFC-SRF, 2021 WL 271800, at \*2-4 (D. Del. Jan. 27, 2021) (recommending dismissal of direct infringement claim where plaintiff "fail[ed] to connect the centralized network management server ('CMS') and target on-demand sever ('TODS') elements of the claim language to the accused Gusto platform").

### 2. WinView's infringement allegations against FD Casino and FD Racing should be dismissed.

In its SAC, WinView accuses—for the first time, and four years after first filing suit—two additional products of infringing the '543 Patent. *Compare* Dkt. 8, ¶ 1 (listing only FanDuel

Sportsbook and Fantasy for "infringement of the asserted WinView patents"), *with* Dkt. 117, ¶ 40 (listing FD Sportsbook, FD Fantasy, FD Casino, and FD Racing as the '543 Patent "Accused Products"). WinView's allegations with respect to two new products should be dismissed for failure to state a claim. The SAC seeks to expand the Complaint to new FanDuel products, but WinView must allege facts that provide fair notice to FanDuel of what is accused for those products. *See Twombly*, 550 U.S. at 555 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). WinView has failed to do so. In fact, the SAC omits any discussion of the relevant technology necessary to state a claim with respect to these two products.

**FD Casino.** The SAC describes FD Casino as one of FanDuel's "iGaming offerings" and that FD Casino "allows customers to bet on a range of games of chance, including casino games such as blackjack, roulette, and slot machines as well as bingo and machine-gaming terminals." *Id.* ¶ 82. The SAC includes three paragraphs with basic details about FD Casino (*id.* ¶¶ 82-84), such as where the games are available (*id.* ¶ 82), how the Casino games generate revenue (*id.* ¶ 83), and how the games are available via several platforms (*id.* ¶ 84). These paragraphs offer no screenshots of the FD Casino website (*id.* ¶¶ 82-84). None of the three introductory paragraphs discuss the relevant technology used by FD Casino, nor are there any allegations sufficient to state a claim for infringement of the '543 Patent. *See id.* ¶¶ 82-84.

When alleging infringement of the '543 Patent specifically, the SAC only contains conclusory factual allegations and not a single relevant screenshot that FD Casino performs the core functions of the claimed invention, such as "comparing the list of assets with a first set of assets" or "sending only a second set of assets." *See Id.* ¶¶ 122-144; '543 patent, 19:13-17.

11

According to the SAC, these are key elements of the alleged invention that "reduce[] data congestion and memory usage, ensuring that users receive the necessary components in a timely manner without overloading their device's resources." Dkt. 117, ¶ 27. WinView may not state a claim for infringement without alleging how FD Casino performs these key claim functions. *See Bot M8*, 4 F.4th at 1352; *DraftKings I*, 2025 WL 1908757, at *5.

Instead of addressing the features of FD Casino, WinView's infringement allegations rely entirely on conclusory allegations, including the sports betting features of other products that are not a part of the FD Casino product. For example, for "comparing the list of assets with a first set of assets," WinView's allegations relate to betting on a basketball game (Dkt. 117, ¶ 136) or baseball (*id.* ¶ 137). Similarly, WinView's allegations for the claim requirement of "sending only a second set of assets" rely solely on sports betting, FD Sportsbook, and conclusory allegations related to FD Racing. *See id.* ¶¶ 122-140. But according to the SAC, FD Casino is not a sports betting platform and instead offers "games of chance, including casino games such as blackjack, roulette, and slot machines as well as bingo and machine-gaming terminals." *Id.* ¶ 82. Indeed, the SAC explicitly distinguishes between sports betting, on the one hand, and online casino games (referred to as "iGaming"), on the other. *See, e.g.*, *id.* ¶¶ 43-44 (describing WinView's alleged work in the areas of "online sports betting and iGaming.") The SAC accurately describes FD Casino solely as an "iGaming" product, not a sports betting platform. *See, e.g.*, *id.* ¶ 82 ("FanDuel's iGaming offerings, including FD Casino ....."). WinView's allegations regarding sports betting cannot state a claim for infringement by FD Casino, which the SAC itself acknowledges does not involve sports betting.

**FD Racing**. The SAC explains that "FD Racing allows users to bet on horseracing and live stream the races" (*Id.* ¶ 73) and includes six paragraphs with basic information about the product,

12

such as a screenshot of the app listing from Apple's app store (*id.* ¶ 70), a description of how FD Racing fits within FanDuel's product offerings (*id.* ¶ 71), the states in which FanDuel offers FD Racing (*id.* ¶ 72), the types of horse races on which users may bet (*id.* ¶73), the types of bets that a user may place (*id.* ¶74), and a screenshot of the FD Racing website (*id.* ¶ 75). Those six introductory paragraphs include no discussion of the relevant technology used by FD Racing, and contain no allegations sufficient to state a claim for infringement of the '543 patent. *See id.* ¶¶ 70-75.

Beyond those six introductory paragraphs, the SAC contains no non-conclusory allegations explaining the basis for WinView's assertion of infringement by FD Racing. *See Id.* ¶¶ 122-144. The SAC simply lists FD Racing among the products accused of infringing the '543 Patent with negligible elaboration, when alleging infringement of the '543 Patent specifically. *Id.* ¶¶ 122-140. There are no "factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Bot M8*, 4 F.4th at 1353.

The SAC includes the conclusory assertion that "for purposes of infringement, the relevant functionality in FD Racing, FD Sportsbook, and FD Casino is the same." *Id.* ¶ 71. But WinView does not identify what these "relevant functionalities" are or how they are "the same" across products. Nor has WinView pleaded any facts to suggest that FD Racing functions in the same manner as FD Sportsbook or FD Casino with respect to the accused features. WinView's conclusory assertion of infringement by FD Racing, devoid of factual allegations connecting FD Racing to the asserted claims, fails to state a claim. *See DraftKings I*, 2025 WL 1908757, at *6 ("a plaintiff 'must identify [a] [d]efendant['s] products which allegedly infringe the [asserted patent], describe the alleged infringement, and 'relate factual assertions to the pertinent claims' of the [asserted patent]" (quoting *NovaPlast*, 2021 WL 5770264, at *5-6)).

13

**B.     WinView's Claims for Willful (Counts I-IV), Induced, and Contributory Infringement (Counts II and IV) as to the '543 and '988 Patents Should be Dismissed.**

Willful, induced, and contributory infringement require, among other things, (1) knowledge of the asserted patent and (2) knowledge of the alleged infringement. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) (willful infringement); *Bio-Rad Laby's, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (contributory infringement and induced infringement). The SAC itself cannot provide the requisite knowledge of the patents or the alleged infringement. *DraftKings I*, 2025 WL 1908757, at *10 (collecting cases); *see ZapFraud Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021) ("[T]he complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages."); *id.* at 251. Nor can prior versions of a complaint provide the requisite knowledge. *ZapFraud*, 528 F. Supp. 3d at 252.

As explained further below, the SAC's allegations of pre-suit knowledge rest almost entirely on events that pre-date the issuance of the Asserted Patents and therefore cannot plausibly demonstrate knowledge of the Asserted Patents or the alleged infringement necessary to state a claim for willful, induced, or contributory infringement. And what little the SAC alleges about events post-issuance of the Asserted Patents says nothing about FanDuel's knowledge of the Asserted Patents or the alleged infringement and thus fails to state a claim for willfulness or indirect infringement. The only allegations concerning FanDuel's knowledge of the Asserted Patents and knowledge of the alleged infringement are based on the SAC filed in this case and a post-suit letter. But WinView may not, as a matter of law, pursue a claim for willful, induced, or contributory infringement based solely on post-suit knowledge. The Court has already addressed these issues in granting DraftKings' prior motion to dismiss (*DraftKings I*, Dkt. 79), and the post-suit allegations in the SAC are legally insufficient for the same reasons in this case.

14

1. **WinView has not plausibly pleaded FanDuel's knowledge of the Asserted Patents or of the alleged infringement.**

*a. The SAC's pre-suit allegations are inadequate as a matter of law.*

The SAC contains no plausible allegation that FanDuel was aware of the Asserted Patents or the alleged infringement before WinView initiated suit against FanDuel. The SAC's allegations focus on discussions of a potential business transaction between WinView and FanDuel, which WinView alleges occurred between "early 2017" and "early 2019." Dkt. 117, ¶¶ 105-107. But WinView never alleges that WinView identified the Asserted Patents to FanDuel as part of those discussions or ever accused FanDuel of infringing these patents before initiating suit against FanDuel. Nor could WinView make those allegations, as the majority of the parties' interactions described in the SAC pre-date the issuance of the Asserted Patents in late 2020. *See id.* ¶¶ 146, 184 (earliest asserted patent issued July 21, 2020). The SAC's allegations concerning the pre-suit interactions between the parties before the Asserted Patents issued are legally insufficient to show the knowledge of the Asserted Patents and knowledge of the alleged infringement required for willful, induced, or contributory infringement. *See, e.g.*, *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. 19-1031-RGA-SRF, 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019), *report and recommendation adopted* 2019 WL 11663798 (D. Del. Nov. 15, 2019) (holding that NexStep failed to plausibly plead pre-suit knowledge of the patents-in-suit because, when NetStep's founder met with Comcast, none of the patents had issued); *Dali Wireless, Inc. v. Corning Optical Commc'ns LLC*, No. 20-cv-06469-EMC, 2022 WL 1426951, at *4 (N.D. Cal. May 5, 2022) (no knowledge of the patents by virtue of prior discussions about the plaintiff's patent portfolio without allegation that those discussions identified the patents at issue).

While the SAC alleges that FanDuel was aware of "parent patent applications" and other unasserted patents that are related to some of the Asserted Patents, *id.* ¶ 107, knowledge of an

15

*application* is not knowledge of a patent. *See NexStep, Inc.*, 2019 WL 5626647, at *3 ("A 'patent pending' notice gives one no knowledge whatsoever. It is not even a guarantee that an application has been filed." (quoting *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334 (D. Del. 2014)); *iFIT Inc. v. Peloton Interactive, Inc.*, No. 21-507-RGA, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) ("Knowledge of a patent application alone, however, is not enough to establish knowledge of the patent(s) that issued from that application and therefore not enough to establish willfulness."). Moreover, WinView supports its factual allegation by referencing a "Status Report," which WinView alleges that it provided to FanDuel. Dkt. 117, ¶ 107. However, WinView fails to attach as an exhibit a copy of any "Status Report" and notably includes no citation to an exhibit in the SAC. *Id.* Thus, there is no evidence that such "Status Report" exists. *Id.* Nevertheless, to the extent that it does, WinView alleges that such a report was provided in "early 2019" (*id.*) which is both unspecific, and prior to the issuance and public availability of any of the Asserted Patents. *See* Spinella Decl., Ex. 2 (application for '543 Patent published April 11, 2019); Ex. 3 (application for '988 Patent published April 25, 2019).[6] In other words, as of the date of the "Status Report," there is no non-conclusory allegation that FanDuel saw the applications that issued as the '543 and '988 Patents. While the SAC alleges that FanDuel reviewed WinView's patent portfolio while conducting diligence on the company in early 2019, the applications that later issued as the asserted patents did not issue until over a year later. *See* Dkt. 117, ¶ 107; *id.* ¶ 146 (alleging that

---

[6]    Courts may take judicial notice of "matters of public record" on a motion to dismiss. *See Bruni v. City of Pittsburgh*, 824 F.3d 353, 360 (3d Cir. 2016). Prosecution histories, including a published patent application, are public records. *See Data Engine Techs. LLC. v. Google LLC*, 906 F.3d 999, 1008 n. 2 (Fed. Cir. 2018); *Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record ...."); 37 C.F.R. § 1.11(a) ("The specification, drawings, and all papers to the file of: [a] *published application*; a patent; or a statutory invention registration are open to inspection by the *public* ...").

16

the '543 patent issued on July 21, 2020), ¶ 184 (alleging that the '988 patent issued on October 20, 2020).

As for the "family members" of the Asserted Patents (Dkt. 117, ¶ 107), the law is clear that knowledge of a related patent is not sufficient on its own to plead knowledge of the asserted patents or the alleged infringement. The "alleged knowledge of patent family members and related patents, along with other allegations, can be sufficient to overcome a motion to dismiss," but not when— like here—the complaint lacks any "other allegations" to support knowledge of the asserted patents. *Cleveland Med. Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4, 11 (D. Del. 2023) (quoting *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, No. 14-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), *report and recommendation adopted* 2016 WL 1274812 (D. Del. Mar. 31, 2016)). For example, in *Elm 3DS*, the "other allegations" included defendants citing the parent patent and three children of that parent application in "prosecuting a number of ***Defendant's own patents***." 2015 WL 5725768, at *3. The SAC contains no such allegations here. Also, there were allegations in *Elm 3DS* that the asserted patent was "well known in the [relevant] industry and was frequently cited by other of Defendants' competitors in that industry," which was a "tight knit" industry. *Id.* at *2. Again, WinView has alleged nothing of the sort here.

The SAC's allegations concerning WinView's website and press releases (*see* Dkt. 117, ¶¶ 101-102) are also insufficient to plead knowledge of the Asserted Patents or the alleged infringement. Critically, WinView never alleges that anyone from FanDuel ever viewed the website or press releases. Moreover, the SAC contains no allegations about what, if anything, WinView's website and press releases said about the Asserted Patents. In fact, the only evidence of the content of WinView's website identified in the SAC is from 2015 (Dkt. 117-5, Ex. 47), and the only press release identified in the SAC is from 2017 (Dkt. 117-8, Ex. 78)—both of which pre-

17

date the publication and issuance of the Asserted Patents by many years. The press release also only identifies the size of a patent portfolio (*id.*), which cannot possibly (let alone plausibly) provide knowledge of a specific patent, much less knowledge of infringement.

In any event, courts have consistently rejected the argument that the mere disclosure of a party's patents on its website or in the press is sufficient to plead knowledge of the asserted patents or the alleged infringement. *See MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 232 (D. Del. 2012) ("This court has not been convinced of the sufficiency of pleadings charging knowledge that is based upon a defendant's participation in the same market, media publicity and unrelated litigation by the defendant's competitors concerning the relevant patent."); *Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, No. 3:16-cv-263 RLM-MGG, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018) (holding that pre-suit knowledge was insufficiently pleaded where plaintiff alleged it "maintained a list of its patents on a website and the parties are competitors who monitor each other's intellectual property"). The SAC pleads no facts that would support a different result here.

WinView argues in *DraftKings I* that pre-issuance facts "can support the plausibility of post-issuance knowledge," but the two cases it cites highlight why the pre-issuance facts here are insufficient. *DraftKings I*, Dkt. 92 at 3. First, in *Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, the court held that there was pre-suit knowledge, in part, because the patent application that matured to one of the asserted patents was cited during the prosecution of the defendant's own patent. No. 2:21-cv-00034-JRG, 2021 WL 12310942, at *3 (E.D. Tex. Nov. 18, 2021). The plausible knowledge from a defendant citing a patent application is vastly different than any of the alleged facts here. There is no allegation that FanDuel ever saw the patent application content, much less relied on it. As for the second case, the defendant "received a cease and desist letter

18

making it aware of the [asserted] patent" **prior** to the litigation. *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1329, 1341 (Fed. Cir. 2012). WinView has alleged no such pre-suit correspondence here; the only correspondence accusing FanDuel of infringement described in the SAC came four years after this lawsuit was filed. *See* Dkt. 117, ¶ 111. Thus, while courts may consider "a series of reasonable inferences" to establish the defendant's knowledge, *Bill of Lading*, 681 F.3d at 1330, no individual or series of inferences under these alleged facts plausibly support FanDuel's pre-suit knowledge.

Finally, WinView alleges that "[d]espite WinView Inc.'s offers to partner and collaborate with FanDuel or for FanDuel to invest in WinView Inc., FanDuel declined. Instead, FanDuel elected to continue its infringement of the Asserted Patents without permission." Dkt. 117, ¶ 115. Such an allegation does not plausibly plead knowledge of the Asserted Patents or knowledge of their alleged infringement either. *Id.* Critically, WinView does not allege that it identified the Asserted Patents, much less the alleged infringement to FanDuel prior to filing suit. *See Dali Wireless, Inc.*, 2022 WL 1426951, at *4.

Therefore, WinView's allegations of pre-suit knowledge fail to plausibly allege that FanDuel had pre-suit knowledge of the Asserted Patents or its alleged infringement by any of its products. Most evidence alleged in the SAC pre-dates the issuance of all patents asserted and therefore fails to state a claim for the same reasons the Court explained in its prior motion to dismiss decision in the *DraftKings* case. *See DraftKings I*, 2025 WL 1908757, at *9 ("These allegations fail to support a claim for willful infringement of the '988 patent because these allegations pre-date the issuance of the '988 patent."). And the only pre-suit, post-issuance allegations fail to allege that WinView (or anyone) ever identified the Asserted Patents to FanDuel, much less the alleged infringement.

19

b. *The SAC's post-suit allegations cannot salvage willfulness or indirect infringement.*

WinView cannot rely on post-suit events to cure its failure to plausibly plead FanDuel's pre-suit knowledge of the Asserted Patents or its alleged infringement. As the Court has already held in *DraftKings I*, an amended complaint cannot establish knowledge of the Asserted Patents for purposes of willful, inducement, or contributory infringement. *See Id.*, at \*10 (collecting cases); *ZapFraud*, 528 F. Supp. 3d at 250-251. WinView may not pursue a claim for willful, induced, or contributory infringement based solely on post-suit knowledge. *See DraftKings I*, 2025 WL 1908757, at \*11-12; *GoTV Streaming, LLC v. Netflix, Inc.*, No. 22-cv-07556, 2023 WL 2627016, at \*3 (C.D. Ca. Feb. 16, 2023); *see also ZapFraud*, 528 F. Supp. 3d at 250-252.

WinView's "notice letter"—sent **four years** after filing suit, and two weeks after the Court's July decision granting DraftKings' previous motion to dismiss—is insufficient to establish willful, induced, or contributory infringement. *See* Dkt. 117, ¶¶ 111-112. Indeed, "sending letters after the initial filing of the present action does not provide evidence of the requisite pre-suit knowledge for indirect infringement," and "does not further the interest of judicial economy in 'preserv[ing] parties' resources [and] encouraging resolution **prior** to filing a lawsuit.'" *Secured Mail Sols., LLC v. Advanced Image Direct, LLC*, No. SACV 12-01090-DOC, 2013 WL 8596579, at \*9 (C.D. Cal. Jan. 30, 2013) (quoting *Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC (ANx), 2012 WL 1835680, at \*1 (C.D. Cal. May 16, 2012)) (emphasis and alterations in original).

Here, WinView's letter is a transparent attempt to circumvent the Court's July ruling in *DraftKings I* and preempt the same in this case. The Court already held that WinView's complaint in *DraftKings I* is insufficient to provide the knowledge of the patents and knowledge of the alleged infringement required for willful and indirect infringement. *See DraftKings I*, 2025 WL 1908757,

20

at \*10; *see ZapFraud*, 528 F. Supp. 3d at 252 (holding that the operative complaint in a lawsuit fails to state a claim for willfulness-based enhanced damages where the "alleged knowledge of the asserted patents is based solely on the content of that complaint or a ***prior version of the complaint***"). WinView's July 2025 letter simply repeats the bare allegation of infringement of the '543 and '988 Patents from WinView's prior complaints and adds no new facts that change the analysis. *See* Dkt. 117-1, Ex. 5 at 2. Indeed, if WinView's post-suit letter were sufficient, a plaintiff could manufacture the requisite knowledge for willful and indirect infringement in every case. *See DraftKings I*, 2025 WL 1908757, at \*10 ("Importantly, 'because a complaint and infringement contentions are a necessary part of patent litigation, a finding that they alone satisfy post-suit notice would invite claims of willful and indirect infringement into literally every patent suit.'" (quoting *VLSI Tech. LLC v. Intel Corp.*, 706 F. Supp. 3d 953, 996 (N.D. Cal. 2023))); *ZapFraud*, 528 F. Supp. 3d at 251 ("The purpose of a complaint is to obtain relief from an existing claim and not to create a claim."). The SAC adds nothing that alters the analysis from when the Court last considered this issue, and the willful, induced, and contributory infringement allegations in the SAC should be dismissed for the same reasons again.

### 2. The induced infringement claims independently fail for lack of specific intent.

WinView's claims for induced infringement fail for the additional reason that WinView has failed to plausibly plead that FanDuel has a "specific intent to encourage another's infringement of the patent," which is a required element of inducement. 35 U.S.C. § 271(b); *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)). To plead a plausible claim for inducement, it is not enough to merely allege that others infringed the patent using the defendant's product; "the patentee must show that the accused inducer took an ***affirmative act*** to encourage infringement

21

with the knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014). Courts have explained that "a plaintiff alleging induced infringement must satisfy the 'rigorous' standard of demonstrating that defendant had a specific intent to encourage infringement." *Oy Ajat, Ltd. v. Vatech Am., Inc.*, No. 10-cv-4875-PGS, 2011 WL 1458052, at *2 (D.N.J. Apr. 14, 2011) (quoting *Best Med. Intern., Inc. v. Accuray, Inc.*, No. 2:10-cv-1043, 2010 WL 5053919, at *6 (W.D. Pa. Dec. 2, 2010)).

WinView fails to allege that FanDuel has the specific intent to induce infringement. At most, the SAC alleges that FanDuel encourages its customers to install and use the accused products, promotes the accused products, and provides instructions and customer support for the accused products. *See* Dkt. 117, ¶¶ 85-93 ("FanDuel's Marketing and Customer Support"), 150-163 ('543 Patent), 188-202 ('988 Patent). But it is not enough to allege that the accused products infringe and that FanDuel specifically intends its customers to use its products. *See, e.g.*, *Straight Path IP Grp., v. Vonage Holdings Corp.*, No. 14-cv-502-JLL, 2014 WL 3345618, at *2 (D.N.J. July 7, 2014) (instructing customers on use of the accused products insufficient to plead inducement); *Otsuka Pharm. Co. v. Zydus Pharms. USA*, 151 F. Supp. 3d 515, 521 (D.N.J. 2015) (product label instructing use of the accused product in an infringing manner insufficient for inducement infringement), *aff'd*, 694 F. App'x 808 (Fed. Cir. 2017); *Zoetis LLC v. Roadrunner Pharmacy, Inc.*, No. 15-cv-3193, 2016 WL 755622, at *5 (D.N.J. Feb. 25, 2016) (dismissing induced infringement claim where complaint merely alleged that defendant sold its product "with advertising or instructions relating to a use that directly infringes").

Nor does any customer support provided by FanDuel for its products suffice to allege induced infringement. *See Memory Integrity, LLC v. Intel Corp.*, 144 F. Supp. 3d 1185, 1193 (D. Or. 2015) ("'[O]rdinary acts incident to product distribution, such as ***offering customers technical***

*support or product updates*,' will not support inducement liability in themselves." (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 937 (2005))). The SAC fails to plausibly allege that FanDuel did any of those activities with a specific intent that its customers infringe the Asserted Patents. Nor could it, because as discussed above, the SAC contains no plausible allegation that FanDuel was even aware of the Asserted Patents.

Because WinView has not plausibly pleaded this additional element required for induced infringement, the Court should dismiss WinView's inducement claims for all Asserted Patents.

### 3. The contributory infringement claims fail for want of facts showing a material component lacking substantial non-infringing uses.

Besides the knowledge elements discussed above, contributory infringement also requires that the defendant supply a component that (1) has no substantial noninfringing uses, and (2) is a material part of the invention. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010) (citing 35 U.S.C. § 271(c)). WinView has not alleged any facts in the SAC supporting these elements of contributory infringement. WinView's claims for contributory infringement should therefore be dismissed for the additional reason that it fails to plead these elements.

For each Asserted Patent, the only allegations in the SAC addressing contributory infringement are the bare assertion that the "Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing uses," followed by a statement that the accused products "are used to gamble, which is their only substantial intended function." *See* Dkt. 117, ¶¶ 159 ('543 Patent), 198 ('988 Patent); *Fujitsu*, 620 F.3d at 1326. WinView's assertion that gambling "is their only substantial function" where the accused products have multiple substantial non-infringing uses (e.g., browsing, account management, free-to-play content, viewing scores/streams, etc.) is illogical. *Id.* "[M]ere speculation on the issue of intent is not enough to survive a motion to dismiss" claims of contributory infringement. *Straight Path IP*,

2014 WL 3345618, at *4. Moreover, WinView's contributory infringement claims fail because they recite boilerplate allegations of contributory infringement that do nothing more than state the legal standard. *See* SAC ¶¶ 159, 198. *People.ai, Inc. v. SetSail Techs., Inc.*, 2021 WL 2333880, at *6 (N.D. Cal. June 8, 2021).

Indeed, WinView's allegations do nothing more than parrot the legal standard, which is insufficient to state a claim. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action ...."). For example, WinView does not allege which components of the accused products are supplied by FanDuel or plead any factual allegations suggesting that those components are not staple articles of commerce or incapable of substantial noninfringing uses. Because courts are "not bound to accept as true a legal conclusion couched as a factual allegation," WinView's contributory infringement allegations should be dismissed in their entirety. *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### C.    Dismissal with Prejudice Is Warranted as to the '543 Patent and the Willful, Induced, and Contributory Infringement Claims

After two rounds of amendments, WinView has had ample opportunity to come forward with facts supporting its claims. Yet WinView has still failed to plead a plausible claim of infringement for the '543 Patent and the knowledge elements required for willful, induced, and contributory infringement.

Dismissal with prejudice is warranted where a plaintiff "consistently presented the same set of facts over the course of numerous filings" that failed to state a claim. *Clayton v. Morgan*, 501 F. App'x 174, 176 (3d Cir. 2012). That is exactly the case here. Here, the Court already dismissed an amended complaint in *DraftKings I* (Dkt. 79) that is similarly worded to the FAC in this case—with analogous pleading deficiencies. WinView's failure to plead facts that plausibly

24

state a claim again confirms that any further amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("futility of amendment" is reason to dismiss with prejudice); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility."); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 776 (Fed. Cir. 2019) (affirming dismissal with prejudice, in part, because "ChargePoint has not identified any alleged facts that could be pleaded that would cure the deficiencies"). FanDuel therefore respectfully requests that the Court grant this motion to dismiss with prejudice.

## **CONCLUSION**

The Court should dismiss with prejudice all counts directed to the '543 Patent (Counts I and II), all claims of willful infringement as to the '543 and '988 Patents (Counts I–IV), and all claims of induced and contributory infringement as to the '543 and '988 Patents (Counts II and IV). In accordance with dismissal of the foregoing counts, the Court should dismiss the SAC in its entirety.

Dated: December 12, 2025

Respectfully submitted,

/s/ *Katherine A. Escanlar*

Katherine A. Escanlar (kescanlar@saiber.com)
**SAIBER LLC**
7 Giralda Farms, Suite 360
Madison, New Jersey 07940
Tel: (973) 845-7720
Fax: (973) 622-3349

Of Counsel:

Richard Berman (Richard.Berman@afslaw.com)
Janine A. Carlan (Janine.Carlan@afslaw.com)
Kevin J. Spinella (Kevin.Spinella@afslaw.com)
Margherita A. Capolino
(Margherita.Capolino@afslaw.com)
**ARENTFOX SCHIFF LLP**
1717 K Street, NW
Washington, DC 20006-5344
Tel: (202) 857-6000
Fax: (202) 857-6395

*Attorneys for Defendants FanDuel, Inc., FanDuel Group, Inc., FanDuel Group Parent LLC, and Betfair Interactive US LLC*