<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| WINVIEW IP HOLDINGS, LLC,<br><br>                   Plaintiff,<br><br>    v.<br><br>FANDUEL, INC., *et al.*,<br><br>                 Defendants. | Civil Action No. 21-13807 (GC) (JTQ)<br><br>          <u>**OPINION**</u> |

<u>**CASTNER, District Judge**</u>

     **THIS MATTER** comes before the Court upon Defendants FanDuel, Inc., FanDuel Group, Inc., FanDuel Group Parent LLC, and Betfair Interactive US LLC's (collectively, FanDuel) Motion to Dismiss Plaintiff WinView IP Holdings, LLC's (WinView) Second Amended Complaint (SAC) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6).  (ECF No. 123.)  WinView opposed, (ECF No. 126), and FanDuel replied, (ECF No. 127).  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, FanDuel's Motion is **GRANTED in part** and **DENIED in part**.

## I.   **<u>BACKGROUND</u>**[1]

The Court assumes the parties' familiarity with the underlying facts, and outlines only the factual background necessary to resolve the instant Motion.[2]   WinView is a limited liability company involved in "mobile gaming and interactive television" whose "technologies enable the creation of an online and mobile environment that enhances the sports viewing and gaming experience[.]"  (ECF No. 117 ¶¶ 3-4.)  FanDuel is "a digital sports entertainment and gaming enterprise" that "provides users with daily fantasy sports, online sports betting, and casino-style gambling offerings" and "is also involved in the design, development, and licensing of sports betting and casino gaming software for online and retail sportsbook and casino gaming products." (*Id.* ¶ 6.)  The premise of this action is FanDuel's alleged infringement of WinView's patents: U.S. Patent Nos. 10,721,543 (the '543 patent) and 10,806,988 (the '988 patent).[3]  (*See id.* ¶¶ 1-2, 5.) The SAC asserts that these patents "introduce transformative advancements in distributed gaming and mobile technology, including real-time bookmaking, geographic integration, specific solutions to manage simultaneous contest participation, and mechanisms to ensure fairness and compliance with state laws."  (*Id.* ¶ 24.)

The SAC now asserts infringement of exemplary claim 118 of the '543 patent, a different claim of the patent than that asserted in the FAC.[4]  (ECF No. 117 ¶¶ 114, 120-121 (asserting claim

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[2]    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

[3]    WinView previously also alleged infringement of U.S. Patent Nos. 9,878,243 (the '243 patent) and 9,930,730 (the '730 patent), but those counts have been dismissed.  (ECF No. 65.)

[4]    The FAC alleged infringement of claims 1 and 9 of the '543 patent.  (ECF No. 8 ¶ 90 (asserting claims 1 and 9).)  The claim of the '988 patent infringed upon as alleged in the SAC also differs from the '988 patent claim at issue in the FAC, but FanDuel does not move to dismiss

118).)  The '543 patent details a "method of and system for enabling a distributed entertainment system over a computing device" where "the entertainment system is directly correlated to live events or televised programs[.]"  (ECF No. 117-1 at 2.)[5]  Claim 118 of the '543 patent provides the following:

> A method implemented on a server device comprising:
>
> > sending a set of service related information related to a location of the mobile Internet-connected computing device to an activity client, wherein the location determines the set of service related information to be loaded;
> >
> > receiving a selection of a service from the activity client to be utilized by a user;
> >
> > sending a set of service-specific information related to the service to the mobile Internet-connected computing device including:
> >
> > > sending a list of assets to the mobile Internet-connected computing device;
> > >
> > > comparing the list of assets with a first set of assets;
> > >
> > > sending only a second set of assets within the list of assets that are not already resident on the mobile Internet-connected computing device, wherein the second set of assets are grouped into a set of necessary assets and a set of preferred assets; and
> >
> > executing an application related to the service within the activity client on the mobile Internet-connected computing device.

(ECF No. 117-1 at 20-21; ECF No. 117 ¶ 120.)

---

WinView's direct infringement claim for the '988 patent.  (*Compare* ECF No. 117 ¶ 165 (asserting exemplary claim 64 of the '988 patent), *with* ECF No. 8 ¶ 110 (asserting claim 1 of the '988 patent); ECF No. 123-1 at 10.)  The '988 patent identifies "[a] method and system for conducting multiple competitions of skill for a single performance[.]"  (ECF No. 117-1 at 25 ('988 patent abstract).)

[5]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

The SAC alleges that four of FanDuel's products infringe upon WinView's patents: FanDuel Sportsbook & Casino (FD Sportsbook), FanDuel Racing (FD Racing), FanDuel Fantasy Sports (FD Fantasy), and FanDuel Casino (FD Casino) (the Accused Products).  (ECF No. 117 ¶ 40.)  FD Casino and FD Racing are described for the first time in the SAC.  The SAC alleges that FD Casino "allows customers to bet on a range of games of chance, including casino games such as blackjack, roulette, and slot machines as well as bingo and machine-gaming terminals." (*Id.* ¶ 82.)  FD Racing "offers betting on horse races . . . [and] the relevant functionality in FD Racing, FD Sportsbook, and FD Casino is the same."  (*Id.* ¶ 71.)

The method detailed in claim 118 of the '543 patent outlines communication of information to a product user.  The method comprises (1) sending service-related information to a user, where the information sent is based on the geographic location of the user, (2) receiving a selection of service from the user, (3) sending service-related information specific to the user's selection to the user's device, including (a) an initial list of assets, (b) comparing that list with a "first set" of assets, and (c) sending to the user an additional "second set of assets" that were not already sent to the user's device, grouped into sets of "necessary" and "preferred" assets, and (4) executing an application related to the service selected.  (ECF No. 117-1 at 20-21.)  The SAC asserts that FanDuel performs this method on a server device that interacts with users on FanDuel's app or website.  (ECF No. 117 ¶ 122.)  The SAC asserts that the Accused Products use this method to operate, alleging: (1) FanDuel sends service-related information, determined by user location, to user devices, (2) users select service, (3) based on the user selection, FanDuel sends back information related to the selected service including (a) an initial list of assets, (b) comparing that list with a "first set" of assets, and (c) sending to the user an additional "second set of assets" that

4

were not already sent to the user's device, classified as "necessary" and "preferred" assets, and (4) FanDuel executes an application related to the service selected. (*Id.* ¶¶ 129-143.)

Previously, FanDuel sought to dismiss WinView's fourth count in the FAC, which alleged infringement of the '988 patent, arguing that the '988 patent is invalid under 35 U.S.C. § 101. (*See* ECF No. 25.) FanDuel did not previously challenge WinView's claims regarding the '543 patent. (*See id.*) The Court denied FanDuel's Motion to Dismiss, holding that "because the '988 patent contains technical subject matter, the Court is unable to effectively evaluate the patent on its face alone and therefore it would be inappropriate at this early stage in the litigation to disregard allegations in the FAC about how the patent is an improvement on technology." (ECF No. 82 at 17-18, 19; ECF No. 83.) The Court allowed WinView's count for direct infringement of the '988 patent to proceed. (*See* ECF No. 83.) To narrow the issues in dispute and preserve resources, WinView filed an unopposed motion for leave to file an amended complaint, (ECF No. 115), which the Court granted, (ECF No. 116). WinView filed the SAC on November 13, 2025, (ECF No. 117). The SAC removed allegations of infringement regarding the '243 and '730 patents and asserts counts for direct infringement, willful infringement, induced infringement and contributory infringement for the '543 and '988 patents. (*See* ECF No. 117 ¶¶ 113-202.) On December 12, 2025, FanDuel filed the instant Motion to Dismiss. (ECF No. 123.)

## II.    **LEGAL STANDARD**

"Generally, district courts adjudicating patent cases apply the substantive law of the Federal Circuit." *NovaPlast Corp. v. Inplant, LLC*, Civ. No. 20-7396, 2021 WL 5770264, at *4 (D.N.J. Dec. 6, 2021) (quoting *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012)). However, "[t]he standard governing [the] grant or denial of a Rule 12(b)(6) motion[] . . . 'is a purely procedural question not pertaining to patent law,' to which this court, and the Federal Circuit on review, applies the rule of the regional circuit." *Id.* (quoting *C&F Packing Co. v. IBP, Inc.*, 224

F.3d 1296, 1306 (Fed. Cir. 2000)).  Therefore, the Court will apply Rule 12(b)(6) precedent from the United States Court of Appeals for the Third Circuit for purposes of deciding this Motion.

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'"  *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dirs. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (internal quotations omitted) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements."  *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim[.]"  *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In the context of patent infringement, while "[a] plaintiff is not required to plead infringement on an element-by-element basis," a plaintiff "cannot assert a plausible claim [for relief] . . . by reciting the [patent] claim elements and merely concluding that the accused product has those elements."  *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352, 1353 (Fed. Cir. 2021).  Such an element-by-element pleading standard would go beyond what is required to survive a motion to dismiss under Rule 12(b)(6).  *Id.* at 1352.  Rather, "[t]here must be some factual

allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.* at 1353.  Moreover, while "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . it [is also true] that [s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim [for relief] is and the grounds upon which it rests." *Id.* (cleaned up).  Importantly, "[t]he level of detail required in any given case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted [patent] claim(s), and the nature of the allegedly infringing device." *Id.*

## III.    DISCUSSION

As previously stated, the SAC asserts counts for direct infringement, willful infringement, induced infringement and contributory infringement for the '543 and '988 patents.  (*See* ECF No. 117 ¶¶ 113-202.)  FanDuel moves to dismiss the direct infringement claim as to the '543 patent as well as the willful infringement and induced and contributory infringement claims as to both the '543 and '988 patents.[6]  (ECF No. 123-1 at 8.)  The Court addresses each claim in turn.

### A.      Direct Infringement of the '543 Patent

The Court finds that the SAC plausibly pleads a claim for direct infringement of the '543 patent.  "To prove direct infringement, [a plaintiff] 'must either point to specific instances of direct infringement or show that the [accused product] necessarily infringes the patent in suit.'" *NovaPlast*, 2021 WL 5770264, at \*5 (quoting *ACCO Brands, Inc. v. ABA Locks Mfrs. Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007)).  Accordingly, a plaintiff "must identify [a] [d]efendant['s] products which allegedly infringe the [patent asserted], describe the alleged infringement, and

---

[6]     FanDuel does not move to dismiss WinView's direct infringement claim as to the '988 patent.

'relate factual assertions to the pertinent claims' of the [asserted patent]." *Id.* (quoting *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1011 (D.N.J. 2016)).

FanDuel argues that the Court should at least dismiss "WinView's allegation of patent infringement against FD Racing and FD Casino, which the SAC accuses for the first time in this case" because WinView omits allegations necessary to state a claim of infringement of the '543 patent for these products. (ECF No. 123-1 at 11, 15-18.) In the alternative, FanDuel argues more broadly that WinView's direct infringement claim for the '543 patent should be dismissed in its entirety. (*Id.* at 11, 12-15.) FanDuel argues that WinView fails to provide fair notice of what is accused for the alleged patent infringement and does not adequately plead facts supporting that FanDuel's Accused Products perform an element necessary to the patent claim now asserted, namely that when a second set of assets is sent to a user device, those "assets are grouped into a set of necessary assets and a set of preferred assets," (the "grouping limitation"). (*Id.* at 12 (quoting '543 patent); *id.* at 13.)

In response, WinView argues that it "was not required to provide additional discussions of FD Racing and FD Casino because there is no requirement that a complaint discuss every accused product with respect to every limitation in order to state a patent infringement claim." (ECF No. 126 at 16.) WinView argues that the SAC states a plausible claim that FanDuel infringes the '543 patent "by providing detailed factual allegations identifying FanDuel's infringing products [] and describing on an element-by-element basis how they meet the limitations of exemplary [c]laim 118." (*Id.* at 8-9.)

The Court will address each of FanDuel's arguments in turn.

### 1.    *Infringement Allegations Against FD Racing and FD Casino*

FanDuel argues that the infringement allegations as to two of its Accused Products—FD Racing and FD Casino—must be dismissed for failure to state a claim for relief. (ECF No. 123-1

8

at 15-16.) WinView responds that the SAC plausibly alleges that these Accused Products infringe claim 118 of the '543 patent. (ECF No. 126 at 13-16.) The Court finds that WinView has plausibly pled infringement of the '543 patent by these two Accused Products.

The SAC alleges three of the Accused Products (FD Sportsbook, FD Casino, and FD Racing) directly infringe upon exemplary claim 118 of the '543 patent.[7] It details the alleged infringement of claim 118 by reference to and descriptions of the workings of these three Accused Products. (ECF No. 117 ¶¶ 113-149.) Courts have found that "providing 'specific examples of at least one product [the defendant] manufactures or sells that contains mechanisms or processes performing the identified functions, and specific examples of the class of products which also contain' the identified functions" sufficiently provided notice to satisfy the pleading requirements under Rule 12(b)(6). *Promos Techs., Inc. v. Samsung Elecs. Co.*, Civ. No. 18-307, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (quoting *Philips v. ASUSTeK Comput. Inc*, Civ. No. 15-1125, 2016 WL 6246763, at *4 (D. Del. Oct. 25, 2016)). WinView has plausibly alleged that the Accused Products it identifies in the SAC—including the two products FanDuel challenges—are part of a "class" and that the three relevant Accused Products directly infringe claim 118 of the '543 patent.

The SAC describes the three Accused Products and their functionalities that allegedly infringe the '543 patent. *See Telebrands Corp. v. Ragner Tech. Corp.*, Civ. No. 15-3163, 2016 WL 11654380, at *5 (D.N.J. Aug. 25, 2016) (finding pleading standard satisfied where pleading included "allegations that describe the accused products" and "the functionalities of those products that allegedly infringe the [] patent, that the accused products meet claims of the [] patent, and that

---

[7]    The SAC alleges that only FD Sportsbook, FD Casino, and FD Racing infringe upon the '543 patent while FD Fantasy is alleged to infringe upon the '988 patent. (ECF No. 117 ¶¶ 114, 165.)

[defendant's] products practice one or more claims of the [] patent"). WinView describes the Accused Products in detail, (*see* ECF No. 117 ¶¶ 54-69 (FD Sportsbook); *id.* ¶¶ 70-75 (FD Racing); *id.* ¶¶ 82-84 (FD Casino)), and alleges that they infringe upon the '543 patent, (*id.* ¶ 114). Contrary to what FanDuel argues, (*see* ECF No. 126 at 9), WinView alleges more commonalities between these Accused Products than their classification as "gambling products." The SAC alleges that all the Accused Products share certain characteristics: they all operate through servers communicating with user devices, continuously monitor the location of those devices to ensure compliance with state laws, and are hosted on cloud-based platforms like Amazon Web Services. (ECF No. 117 ¶¶ 48-53, 91-94.) The SAC explicitly alleges that "for purposes of infringement, the relevant functionality in FD Racing, FD Sportsbook, and FD Casino is the same." (*Id.* ¶ 71.)

After describing the Accused Products and their commonalities, the SAC then describes in more detail the allegedly infringing functionality of these products. (*Id.* ¶¶ 122-144.) The SAC alleges that like the method detailed in claim 118, three of FanDuel's Accused Products perform the method on a server that interacts with a customer's device being used to operate an Accused Product. (*Id.* ¶¶ 121-128.) FanDuel sends service-related information, determined by the user's location, to user devices. (*Id.* ¶¶ 129-132.) Using FD Casino as an example, the SAC alleges that FanDuel determines the geographic location of user devices and then offers different games to customers based on their location. (*Id.* ¶ 132.) The user then selects a service, and that information is sent back to FanDuel. (*Id.* ¶¶ 132-133.) FanDuel then sends back information related to the selected service, which may include things like graphical assets, game logic, and sound files. (*Id.* ¶ 133.) FanDuel then continuously compares and sends additional lists of assets to users' devices as they operate the selected service, comparing the potential assets with those already on a user's device so that FanDuel is only sending lists with new assets. (*Id.* ¶¶ 134-135, 139.) Using sports

betting as an example, the SAC alleges that during a live gaming event a consumer selects to bet on, FanDuel would continuously send assets to a user's device such as updated odds for in-game betting, updated event information, or progressive odds updates depending on the product selected. (*See id.* ¶¶ 135-138.)  The SAC alleges that assets sent to user devices are either "necessary" or "preferred," where the former are necessary to execute the application and the latter improve the user experience but are not required for the Accused Products to perform their function of accepting wagers.  (*Id.* ¶¶ 140-141.)  "Necessary" assets would be updated odds information, while "preferred" assets would be event live streams and game scores.  (*Id.* ¶¶ 140-141.)  Throughout the SAC, WinView provides examples showing how the patented functionality is employed by the Accused Products.  (*See id.* ¶ 132 (giving example of FD Casino for allegation that FanDuel sends service-related information to user's devices based on their location); *id.* ¶¶ 135-137 (detailing how FanDuel continuously compares and sends new information, such as updated odds and price data throughout a game, to users on FD Sportsbook); *id.* ¶ 139 (providing example of FD Racing for allegation that a second set of assets are sent to user devices after service has been selected).)

Regarding the FD Casino product specifically, FanDuel argues that the SAC distinguishes between this product (an "iGaming offering[]") and the other three Accused Products, which are sports betting products.  (ECF No. 123-1 at 16.)  As such, FanDuel argues that "WinView's allegations regarding sports betting cannot state a claim for infringement by FD Casino, which the SAC itself acknowledges does not involve sports betting."  (*Id.* at 17.)  But FanDuel's argument does not account for the functionalities alleged to be shared between the Accused Products, such as their server operation, location monitoring, cloud hosting, and continuous comparison and communication of assets.  (ECF No. 117 ¶¶ 48-53, 71, 91-94, 134-135.)  Additionally, the SAC alleges that FD Casino is based on live events like the other Accused Products, which all the

11

methods described in the '543 patent engage with. (ECF No. 117-1 at 2 (abstract for '543 patent, specifying that the present invention "implement[s] a distributed entertainment system wherein the entertainment system is directly correlated to live events or televised programs"); *see* ECF No. 117 ¶ 84 ("FanDuel offers online poker as a peer-to-peer game via several platforms"); *id.* ¶ 122 ("FanDuel's servers communicate with customers' devices . . . and store data files there relating to odds and scores of the live sporting events, casino games, and horse racing that customers bet on."); *id.* ¶ 134 ("FanDuel continuously communicates with servers and the customers' devices that are running the '543 Accused Products in order to provide information such as real-time game statistics and betting information during a live gaming event (FD Sportsbook or FD Racing) or casino game (FD Casino)"); *id.* (including screenshot of FD Casino's live gaming offerings); *id.* ¶ 142 (explaining that an FD Casino preferred asset is an event live stream).)

Accepting all factual allegations in the SAC as true and construing it in the light most favorable to WinView as it must, the Court finds that WinView has alleged facts sufficient to provide FanDuel fair notice of the alleged infringement from the FD Casino and FD Racing products. The SAC parallels the pleadings of other exemplary products which have been found sufficient to satisfy Rule 12(b)(6). *See, e.g.*, *Promos*, 2018 WL 5630585, at *3 ("The identified product is a specific example of the class of products . . . which [p]laintiff alleges also contain the identified functions. . . . Therefore, [p]laintiff's identification of infringing products and methods is sufficient under Rule 12(b)(6)."); *Philips*, 2016 WL 6246763, at *4 (finding it sufficient that the plaintiff "provides specific details of at least one of the method and device [patent] claims allegedly infringed under each patent-in-suit, specific examples of at least one product [defendant] manufactures or sells that contains mechanisms or processes performing the identified functions,

and specific examples of the class of products which also contain these Accused Functionalities") (citations omitted).

### 2. *Infringement Allegations Regarding Claim 118 of the '543 Patent*

In the alternative, FanDuel argues that total dismissal of this count is warranted because WinView has failed to provide FanDuel with fair notice of the alleged infringement of the '543 patent. (ECF No. 123-1 at 12-15.) Specifically, FanDuel argues that WinView fails to allege infringement of claim 118 by failing to plead the grouping limitation included in that patent claim. (*Id.* at 13-14; ECF No. 117 ¶ 120 (an element of the claim requiring "sending only a second set of assets within the list of assets that are not already resident on the mobile Internet-connected computing device, wherein the second set of assets are grouped into a set of necessary assets and a set of preferred assets," referred to as the "grouping limitation").) FanDuel argues that while the SAC alleges FanDuel sends a second set of assets to user's devices and discusses necessary and preferred assets generally, it does not *specifically* allege that the Accused Products send users a second set of assets grouped into necessary and preferred assets, and thus does not fulfill its obligation to provide FanDuel with fair notice of how the Accused Products plausibly infringe the '543 patent. (*See* ECF No. 123-1 at 16-20.) The Court finds that the SAC sufficiently pleads infringement.

Relevant to the grouping limitation, the SAC alleges that "FanDuel continuously communicates with customers' devices that are running the '543 Accused Products in order to provide information" and "FanDuel sends lists of assets to users' devices which can be compared to the existing list of assets on the device or subsequent lists that are generated on the device[.]" (ECF No. 117 ¶ 134.) Additionally, the SAC specifies that "[t]he '543 Accused Products receive[] only a second set of assets within the list of assets that are not already resident on the mobile Internet-connected computing device" and "[t]here are multiple second sets of assets that are only

13

transmitted to customers' devices when the information changes (a new asset)." (*Id.* ¶ 139.) The SAC alleges that this second list of assets can include "real-time game statistics and betting information" such as "updated odds for in-game betting (FD Sportsbook or FD Racing) or updated event information or progressive odds updates (FD Casino)" (*Id.* ¶¶ 134-135.)

The SAC also alleges that assets sent are grouped as either "necessary" and "directly affect the operation of the application" such as updated odds information, or "preferred" and "are not necessary to operate to accept wagers" such as live streams of events or game score and statistics. (*Id.* ¶¶ 140-141.) Preferred assets are sent only when a user's network is sufficiently stable, while necessary assets are always sent as the Accused Products cannot execute their function without those assets. (*Id.* ¶¶ 141-142.) Using FD Sportsbook as an example, the SAC alleges that "[w]hereas the wagering odds and game state information is always displayed and updated, being necessary to Sportsbook's functionality, the live stream assets are updated only preferentially[.]" (*Id.* ¶ 141.) WinView argues that the SAC's "detailed factual allegations identify the accused functionality and explain how the systems differentiate assets in execution, satisfying the Grouping Limitation, which is more than sufficient at the pleading stage to state a claim [for relief]." (ECF No. 126 at 11.) The Court agrees, and finds that the SAC provides FanDuel fair notice of the functionality of its products' alleged infringement of claim 118 of the '543 patent.

WinView does not dispute that the grouping limitation is material to claim 118 of the '543 patent.[8] (*See* ECF No. 126 at 9-13.) While the level of detail required in a pleading varies

---

[8]     Regardless, "[b]oth [the Federal Circuit] and the Supreme Court have made clear that all elements of a patent claim are material, with no single part of a claim being more important or 'essential' than another." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 988 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996); *see also ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1276 (Fed. Cir. 2018) ("It is well established that '[e]ach element contained in a patent claim is deemed material to defining the scope of the patented invention.'") (quoting *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997)); *Two-Way Media Ltd*

depending on the complexity of the patented technology and the materiality of any given element, this does not disturb the overarching rule that "[a] plaintiff is not required to plead infringement on an element-by-element basis." *Bot M8*, 4 F.4th at 1352; *see also Phonometrics, Inc. v. Hosp. Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed. Cir. 2000) ("The Rule 12(b)(6) pleading requirements for a complaint of infringement cannot be extended to require a plaintiff to specifically include each element of the claims of the asserted patent."). "[I]n matters involving complex technology, the plaintiff 'must show *how* the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the [patent] claim elements.' To satisfy this standard, '[t]here needs to be something set out beyond a legal conclusion—*i.e.*, some facts alleged that shows why it is plausible that the products infringe[.]'" *Biotech v. Amgen, Inc.*, Civ. No. 22-35, 2024 WL 1299930, at *3 (D. Del. Mar. 27, 2024) (emphasis in original) (first quoting *Bos. Sci. Corp. v. Nevro Corp.*, 415 F. Supp. 3d 482, 489 (D. Del. 2019); then quoting *DIFF Scale Operation Rsch., LLC v. MaxLinear, Inc.*, Civ. No. 19-2109, 2020 WL 2220031, at *2 (D. Del. May 7, 2020), *report and recommendation adopted*, 2020 WL 6867103 (D. Del. Nov. 23, 2020)).

FanDuel cites case law where motions to dismiss rose and fell based on whether the complaint specifically addressed patent claim elements, arguing that these cases dictate that FanDuel's Motion must be granted due to WinView's failure to allege every single patent claim element. (ECF No. 123-1 at 15 (citing *Miller Indus. Towing Equip. Inc. v. NRC Indus.*, 582 F. Supp. 3d 199, 204 (D.N.J. 2022) (denying motion to dismiss because "the [c]omplaint sufficiently sets forth how the accused product infringed on every element of at least one claim in each of the

---

*v. Comcast Cable Commc'ns, LLC*, Civ. No. 14-1006, 2015 WL 2345432, at *4 (D. Del. May 13, 2015) (holding when considering a motion to dismiss that "[e]ach element contained in a patent claim [of a method patent] is deemed material to defining the scope of the patented invention") (second alteration in original) (citation omitted).

plaintiff's patents") (quotation omitted); *Uniloc 2017 LLC v. Zenpayroll, Inc.*, Civ. No. 19-1075, 2021 WL 271800, at *4 (D. Del. Jan. 27, 2021) (recommending a grant of dismissal because the complaint "fails to plausibly allege facts that the accused [infringing product] includes [elements of the asserted patent claim] beyond the bare recitation that the alleged [infringing product] comprises [the specified elements of the patent claim]"); *NovaPlast Corp. v. Inplant, LLC*, Civ. No. 20-7396, 2021 WL 389386, at *8 (D.N.J. Feb. 3, 2021) (granting motion to dismiss because complaint "fails to allege factually that each and every element of at least one [patent] claim is met").)  But these cases are distinguishable.  *NovaPlast* and *Miller* rely on the Federal Circuit's decision in *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). *See NovaPlast*, 2021 WL 389386, at *7-8 (quoting *Disc Disease*); *Miller*, 582 F. Supp. 3d at 204-05 (first quoting *Batinkoff v. Church & Dwight Co.*, 2020 WL 1527957, at *15 (D.N.J. Mar. 31, 2020) (quoting *Disc Disease*); then quoting *NovaPlast*, 2021 WL 389386 at *7).  In *Disc Disease*, the Federal Circuit held that in the context of a case involving a "simple technology" with only four independent patent claims, a plaintiff plausibly pled infringement when it specifically identified the accused products, and "alleged that the accused products me[t] 'each and every element of at least one [patent] claim[.]'"  888 F.3d at 1260.  As alleged, the technology here is not so simple; the '543 patent includes over 100 claims.  (*See* ECF No. 117-1 at 17-21 ('543 patent claims).)  And in *Uniloc*, the court disclaimed that "'the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that each element of an asserted claim is met,' and a patent infringement plaintiff need not 'prove its case at the pleading stage'" but recommended dismissal because the complaint only included conclusory allegations and lacked allegations connecting the allegedly infringing product to the patent claim elements.  *See* 2021 WL 271800, at *2-4 (quoting *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018)).  Here, by contrast, WinView has

16

provided detailed allegations of how the Accused Products function and communicate service-related information to users' devices, directly infringing upon the method outlined in claim 118.

Courts have found dismissal is not warranted where a complaint "connects elements from the [allegedly infringed patent] to elements of [the defendant's] accused product . . . [because] the complaint puts [the defendant] on notice as to what activity is being accused and how that activity infringes the [] Patent." *Biotech*, 2024 WL 1299930, at \*4; *see also Woodstream Corp. v. Bird Buddy, Inc.*, Civ. No. 24-01236, 2025 WL 2432506, at \*4 (D. Del. Aug. 22, 2025) ("Even under the materiality consideration espoused in *Bot M8*, plaintiffs' complaint presented 'a higher level of detail in pleading infringement.' . . . [The p]laintiffs did much more than 'nakedly alleg[e] that the accused product practices the claimed invention's point of novelty.' Thus, defendant was given 'fair notice of what the claim [for relief] is and the grounds upon which it rests.'") (internal citations omitted) (first quoting *Vervain, LLC v. Micron Tech., Inc.*, Civ. No. 21-00487, 2022 WL 23469 (W.D. Tex. Jan. 3, 2022); then quoting *Bot M8*, 4 F.4th at 1353); *Staton Techiya, LLC v. Harman Int'l Indus., Inc.*, 734 F. Supp. 3d 354, 373 (D. Del. 2024) ("The allegations meet the *Iqbal*/*Twombly* standard by identifying the infringing accused product [] and the specific functionality that is infringing . . . . The lack of the words [specified in the patent claim limitation] is not detrimental to the sufficiency of the pleading of the allegations, as [the plaintiff] does not need to plead every single element for its claim."); *Olink Proteomics AB v. Alamar Biosciences, Inc.*, Civ. No. 23-1303, 2025 WL 275604, at \*9 (D. Del. Jan. 23, 2025) (granting motion to dismiss where complaint did not plead that the accused product practiced a limitation outlined in the patent but noting "[p]erhaps if [plaintiff's] [c]omplaint had clearly asserted infringement as to all of the *remaining limitations* in [the claim], then drawing all reasonable inferences in [plaintiff's]

17

favor, it would be plausible to come to a different conclusion."), *report and recommendation adopted*, 2025 WL 459697 (D. Del. Feb. 11, 2025) (emphasis in original).

Here, WinView has put FanDuel on notice of how its Accused Products are alleged to infringe upon the method in claim 118. It has done more than "nakedly allege" infringement. *See Woodstream Corp.*, 2025 WL 2432506, at *4. The SAC runs through the method enumerated in claim 118, alleging that FanDuel operates the Accused Products on servers and (1) FanDuel sends service-related information, determined by the users' location, to users' devices, (2) users select service, (3) FanDuel sends back service-specific information including a first list of assets, compares that list with a second set of assets, and sends a second set of assets not previously received by the user, and all assets are classified as either "necessary" or "preferred," and (4) FanDuel executes applications related to the service selected. (ECF No. 117 ¶¶ 129-143.) Although WinView may not explicitly allege that FanDuel groups this second set of assets as outlined in claim 118, this omission is not fatal. *Staton Techiya, LLC*, 734 F. Supp. 3d at 373 ("The lack of the words [specified in the patent claim limitation] is not detrimental to the sufficiency of the pleading of the allegations, as [the plaintiff] does not need to plead every single element for its claim."); *see also Nasdaq, Inc. v. IEX Grp., Inc.*, Civ. No. 18-3014, 2019 WL 102408, at *12 (D.N.J. Jan. 4, 2019) (finding complaint sufficiently provided defendant with notice of alleged infringement and holding that "[t]o the extent [defendant] argues the [c]omplaint does not specify the precise methods [defendant] use[s] in its infringing device, at this stage of the litigation, all [plaintiff] has access to is [defendant]'s public statements, which it used to fashion the [c]omplaint. The specifics of how [defendant]'s purportedly infringing device works is something to be establish[ed] through discovery."). Therefore, WinView's count alleging direct infringement of the '543 patent shall proceed.

### B.    Willful Patent Infringement

FanDuel argues that the Court should dismiss WinView's counts for willful infringement for both the '543 and '988 patents because neither the pre-suit nor post-suit knowledge alleged in the SAC is sufficient to state a claim for relief.  (ECF No. 123-1 at 19-26.)  The Court agrees.

To sustain an allegation of willful infringement, WinView "must allege facts plausibly showing that as of the time of the [lawsuit]'s filing, [FanDuel]: (1) knew of the [patents]; (2) after acquiring that knowledge, it infringed the [patents]; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the [patents]."  *NovaPlast*, 2021 WL 5770264, at *9 (quoting *Batinkoff*, 2020 WL 1527957, at *19).  The third element, that the defendant knew or should have known its conduct amounted to infringement, speaks to "a finding of 'deliberate or intentional' infringement," which is necessary for a claim of willful infringement. *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, 801 F. Supp. 3d 495, 522 (D. Del. 2025) (quoting *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 440 (D. Del. 2023)); *see also Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("[W]illfulness requires deliberate or intentional infringement.").  "[W]here a complaint permits an inference that the defendant was on notice of the potential infringement and still continued its infringement, the plaintiff has pled a plausible claim of willful infringement."  *Nasdaq, Inc.*, 2019 WL 102408, at *14 (quoting *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, Civ. No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018)).

The SAC alleges that the '543 patent was issued on July 21, 2020, and that "FanDuel became aware of the '543 Patent and aware that its activities concerning the '543 Accused Products infringed the '543 Patent no later than upon its issuance on July 21, 2020."  (ECF No. 117 ¶ 146.) The SAC alleges that the '988 patent was issued on October 20, 2020, and that "FanDuel became aware of the '988 patent and aware that its activities concerning the '988 Accused Products

19

infringed the '988 patent no later than upon its issuance on October 20, 2020." (*Id.* ¶ 184.)  The SAC further asserts that in "early 2017" WinView and FanDuel exchanged communications regarding their "similar interests," (*id.* ¶ 105), and in "early 2019" WinView and FanDuel engaged in discussions about WinView's intellectual property under a nondisclosure agreement (NDA), (*id.* ¶¶ 106-107).  The SAC generally alleges that FanDuel "investigated WinView and its business, including its patents," and WinView shared "detailed information regarding WinView Inc. and its patented technology" with FanDuel in early 2019,[9] including "specifically identif[ying] the respective parent patent applications for the asserted '543 and '988 Patents[.]"[10]  (*Id.* ¶ 107.)  However, these allegations are insufficient to assert a claim for willful infringement because they predate the issuance of both patents.

As the Federal Circuit has articulated, "[i]t is obvious that a party cannot be held liable for 'infringement', and thus not for 'willful' infringement, of a nonexistent patent[.]"  *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990).  "To willfully infringe *a patent,* the patent must exist and one must have knowledge of it.  A 'patent pending' notice gives one no knowledge whatsoever. . . . What the scope of claims in patents that do issue will be is

---

[9]    Furthermore, the Court notes that while the SAC generally alleges WinView disclosed information about its patent applications in FanDuel in "early 2019," (ECF No. 117 ¶ 107), applications for both patents were not published until April 2019, (ECF No. 123-4 at 2 (application for '543 patent, published April 11, 2019); ECF No. 123-5 at 2 (application for '988 patent, published April 25, 2019)).  *See Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (noting that "[p]rosecution histories constitute public records" of which a court may take judicial notice).

[10]    FanDuel asserts that because WinView alleges it identified these applications in a "Status Report" provided to FanDuel, and WinView did not attach any such Status Report to the SAC, "there is no evidence that such 'Status Report' exists."  (ECF No. 123-1 at 21.)  However, a plaintiff "is not required to attach specific documents or sources to which [its] complaint refers to survive a motion to dismiss."  *Lockhart v. Dorrance Publ'g Co., Inc.*, Civ. No. 22-02929, 2023 WL 157323, at *9 n.6 (D.N.J. Jan. 11, 2023).

something totally unforeseeable." *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) (emphasis in original). "Filing an application is no guarantee any patent will issue and a very substantial percentage of applications never result in patents." *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, Civ. No. 19-1031, 2019 WL 5626647, at *3 (D. Del. Oct. 31, 2019), *report and recommendation adopted sub nom. Nexstep, Inc. v. Comcast Cable Commc'n, LLC*, Civ. No. 19-1031, 2019 WL 11663798 (D. Del. Nov. 15, 2019) (quoting *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334 (D. Del. 2014)).

The allegations that FanDuel had knowledge of the family members of the '543 and '988 patents, standing alone, are also insufficient to plead knowledge of the patents-at-issue. (ECF No. 117 ¶ 107; ECF No. 126 at 22-23.) "Although 'alleged knowledge of patent family members and related patents, along with other allegations, can be sufficient to overcome a motion to dismiss,'" the complaint must also include "other allegations." *Cleveland Med. Devices Inc. v. ResMed Inc.*, 696 F. Supp. 3d 4, 11 (D. Del. 2023) (quoting *Elm 3DS Innovations, LLC v. Samsung Elecs. Co.*, Civ. No. 14-1430, 2015 WL 5725768, at *3 (D. Del. Sept. 29, 2015), *report and recommendation adopted* 2016 WL 1274812 (D. Del. Mar. 31, 2016)). For example, in *Novozymes North America, Inc. v. Danisco US Inc.*, the court found the defendant's knowledge of the patent at issue was sufficiently pleaded because not only did the plaintiff allege that the defendant had knowledge of patent family members and related patents, the plaintiff also alleged that the defendant was informed of the plaintiff's published patent application on three separate occasions during the prosecution of the defendant's own patents and the defendant attended a workshop where the plaintiff presented on the patent after it had issued. Civ. No. 19-01902, 2020 WL 12895027, at *2-3 (D. Del. Feb. 12, 2020). The SAC does not include "other allegations" that, when coupled with

21

the plausible allegation that FanDuel had knowledge of patent family members, lead to the inference that FanDuel had the requisite knowledge of the '543 and '988 patents after they issued.

The SAC's allegations that WinView "widely disclosed" the asserted patents to the "online gaming industry" and issued press releases, and that FanDuel was "well aware" of WinView because it is "an entity that conducts significant market research," also do not create a plausible inference that FanDuel knew of the asserted patents and knew or should have known its conduct infringed the patents.  (*See* ECF No. 117 ¶¶ 101-104.)  Plaintiffs "may not depend on conclusory allegations to state a willfulness claim."  *Cleveland Med. Devices Inc.*, 696 F. Supp. 3d at 11.  "[T]he simple fact that [defendant] and [plaintiff] are competitors," without more, is "insufficient to state a plausible claim based on pre-suit knowledge of the [patent]."  *Novozymes North America, Inc.*, 2020 WL 12895027, at *3.  WinView makes these cursory allegations in the SAC, citing to exhibits that predate the patent applications and the patents issuing by several years.  (ECF No. 117 ¶¶ 101-102 (citing to ECF No. 117-5 at 6-8 (website dated December 2015); ECF No. 117-8 at 26-31 (press release dated 2017)).)  An allegation of "media publicity surrounding an invention does not support an allegation of pre-suit knowledge absent allegations 'bridging' knowledge of the publicity with knowledge of the patent."  *Robocast, Inc. v. YouTube, LLC*, Civ. No. 22-304, 2022 WL 16922035, at *3 (D. Del. Nov. 14, 2022) (quoting *PPG Indus. Ohio, Inc. v. Axalta Coating Sys., LLC*, Civ. No. 21-346, 2022 WL 610740, at *4 (D. Del. Jan. 26, 2022)).  WinView's general allegation that it "regularly updated [its] website, disclosing the [a]sserted [p]atents as they issued," (ECF No. 117 ¶ 101), is insufficient.  *See Lippert Components Mfg., Inc. v. MOR/ryde, Inc.*, Civ. No. 16-263, 2018 WL 345767, at *2 (N.D. Ind. Jan. 10, 2018) (finding knowledge insufficiently pled when plaintiff alleged it "maintained a list of its patents on a website and the parties are competitors who monitor each other's intellectual property").

22

Contrary to WinView's arguments in its opposition brief, (ECF No. 126 at 21-22), the SAC contains only general and conclusory allegations that FanDuel monitored or investigated WinView and its patent portfolio after declining WinView's offer to partner in "early 2019."  (ECF No. 117 ¶ 109 ("Given FanDuel's efforts to monitor the marketplace and investigate relevant technology and intellectual property and given FanDuel's diligence into WinView's patents . . . on information and belief, FanDuel continued to monitor the applications that issued as the Asserted Patents and was aware when they issued.").)  The SAC includes no allegations that FanDuel was informed the patents had issued in 2020 or that it monitored WinView's patent portfolio post-issuance in 2020. The lack of more concrete allegations distinguishes the present matter from those cases cited by WinView, (ECF No. 126 at 22), where courts found knowledge of the asserted patents sufficiently pled due to allegations that defendants monitored the plaintiff's patent portfolios.  *See VoIP-Pal.com, Inc. v. Facebook, Inc.*, Civ. No. 21-00665, 2022 WL 1394550, at *3 (W.D. Tex. May 3, 2022) (finding defendant's knowledge of the asserted patents could be inferred where "the [a]mended [c]omplaint relie[d] on the [pre-suit] notice letters that identify the [first p]atent and a patent application that ultimately led to the [second p]atent in further combination with monitoring of that patent application, resulting in knowledge of the [second p]atent on or after the issuance date"); *Technoprobe S.p.A. v. Formfactor, Inc.*, Civ. No. 23-00842, 2024 WL 2271885, at *7 (D. Del. May 20, 2024) (concluding "that the [a]mended [c]omplaint alleges facts plausibly showing that [the d]efendant, through actively attending [the p]laintiff's [ . . . c]onference presentation and continuing to promote and sell the [a]ccused [p]roducts thereafter, was aware of the [asserted p]atent and its potential infringement sufficient to support a pre-suit willful infringement claim.").

Even assuming that FanDuel did have notice of the patents-in-suit, the SAC lacks sufficient allegations for this Court to infer that FanDuel knew or should have known that its conduct

amounted to infringement.  *See NovaPlast*, 2021 WL 5770264, at *9.  WinView alleges that it filed suit because of "FanDuel's infringement and unwillingness to participate in discussions regarding WinView's intellectual property" but does not detail whether WinView is referring to the "early 2019" discussions before the patents issued, or some potential interaction after the patents issued (none of which are alleged in the SAC).  (ECF No. 117 ¶ 110.)  In addition, WinView makes no specific allegations that it disclosed the patents after they issued or directly informed FanDuel of its allegedly infringing activity before filing this lawsuit.  WinView's allegations are insufficient. *See Sprint Commc'ns Co. L.P. v. Cequel Commc'ns, LLC*, Civ. No. 18-1752, 2022 WL 421336, at *1 (D. Del. Jan. 13, 2022) (finding no willfulness when facts offered in support of claim for relief included a letter "sent to [defendant's] general counsel to 'request a meeting between our companies regarding [plaintiff's] patent portfolio and how it may apply to the operations of your company'" but "[t]he letter d[id] not mention infringement, list any patents, or describe any particular technology") (citations omitted); *Cleveland Med. Devices Inc.*, 696 F. Supp. 3d at 14 (holding plaintiff did not plead facts plausibly showing defendant knew or should have known of its alleged infringement where it made conclusory allegations and "plainly d[id] not assert any nonconclusory facts supporting an inference of 'deliberate or intentional infringement'").

Contrary to WinView's argument, (ECF No. 126 at 20-21), the allegations in the SAC are unlike those in *University of Massachusetts Medical School v. L'Oréal S.A.*, Civ. No. 17-868, 2018 WL 5919745, at *9 (D. Del. Nov. 13, 2018), *report and recommendation adopted*, 2019 WL 2151701 (D. Del. May 17, 2019), *rev'd and remanded on other grounds*, 36 F.4th 1374 (Fed. Cir. 2022).  The *L'Oréal* court found the complaint adequately pled knowledge because it alleged that the defendant cited the patents-in-suit (one still at the application stage) in its *own* patent application, *and* the defendant later contacted the plaintiff after both patents-in-suit had issued to

obtain a license.  *Id.*  Without plausible allegations that FanDuel had knowledge of the patents post-issuance and its allegedly infringing conduct, WinView cannot plead a claim for willful infringement.  *See NexStep, Inc.*, 2019 WL 5626647, at *3 ("[The plaintiff] has failed to plausibly plead pre-suit knowledge of the patents-in-suit because, when [the plaintiff] met with [the defendant], none of the patents-in-suit had issued."); *see also iFIT Inc. v. Peloton Interactive, Inc.*, Civ. No. 21-507, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) ("Knowledge of a patent application alone, however, is not enough to establish knowledge of the patent(s) that issued from that application and therefore not enough to establish willfulness.").

While "acts occurring before a patent's issuance may remain relevant to an [] infringement claim where the acts . . . continue after the patent's issuance," *Gamon Plus, Inc. v. Campbell's Co.*, 764 F. Supp. 3d 690, 704-05 (N.D. Ill. 2025),[11] the Court cannot infer FanDuel had the requisite post-issuance knowledge of the patents or that its conduct was infringing based on the existence of this lawsuit.  (*See* ECF No. 117 ¶¶ 110-111.)  Allegations of pre-issuance knowledge, without a tie to facts showing infringement post-issuance, are insufficient.  *Cf. Barkan Wireless IP Holdings, L.P. v. T-Mobile US, Inc.*, Civ. No. 21-00034, 2021 WL 12310942, at *3 (E.D. Tex. Nov. 18, 2021) (finding allegations of knowledge sufficient, despite facts focusing on knowledge in the time before patent issued, when complaint also asserted (1) defendants cited the patent application during the prosecution of its own patent and (2) defendants made public announcements pre-lawsuit regarding their development of the allegedly infringing technology).

---

[11]   While the *Gamon Plus* court considered induced infringement rather than willful infringement, the Federal Circuit has "acknowledged that '[i]n some respects, the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer.'" *SynQor, Inc. v. Vicor Corp.*, No. 2024-1879, 2026 WL 410931, at *7 (Fed. Cir. Feb. 13, 2026) (alteration in original).  As such, the *Gamon Plus* court's analysis of whether infringing acts were intentional in the induced infringement context is instructive in the willful infringement context. *Id.* ("[E]vidence of indirect infringement may be probative of willfulness[.]").

Lastly, WinView argues that because the Federal Circuit has held a patentee may "rely, for the knowledge element of [willful infringement or] inducement, on the knowledge the defendant gained from the original complaint,"[12] *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1068 (Fed. Cir. 2026) (citing *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1345 (Fed. Cir. 2012)), its allegations of knowledge are sufficient here.  (ECF No. 129; *see also* ECF No. 126 at 23-27; *see id.* at 17 (citing *Bill of Lading*).)  But the cases WinView relies upon do not hold that knowledge gained from the filing of the complaint, standing alone, is sufficient to satisfy the requirement that an alleged infringer knew of the asserted patent(s) and that its conduct infringed upon them.[13]  The Federal Circuit in *Bill of Lading* noted that "[d]etermining whether a complaint states a plausible claim for relief is a very 'context-specific task,'" 681 F.3d at 1337 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)), and found that the complaint adequately stated a claim of induced infringement because reasonable inferences could be drawn that the defendants knew the induced acts constituted infringement, *id.* at 1328, 1330, 1339-40.

The facts here differ from those in *Bill of Lading*.  In *Bill of Lading*, the plaintiff sent cease-and-desist letters to several defendants it suspected of direct infringement *before* the lawsuit was initiated.  *Id.* at 1329.  Additionally, the *Bill of Lading* court concluded that reasonable inferences

---

[12]     This quoted language refers to an argument put forth by the plaintiff-appellant in the *GoTV* case, and although the Federal Circuit noted it was a "substantial argument[] that the district court committed error," the court explicitly did "not decide the merits of [that] contention" as it entered judgment for defendant-appellee on other grounds.  *GoTV Streaming, LLC*, 166 F.4th at 1068.

[13]     Faced with this same question, another district court in the Central District of California agreed with this Court's interpretation of *GoTV Streaming* and *Bill of Lading*.  *Innovation Techs. Partners LP v. Hulu, LLC*, Civ. No. 25-10969, 2026 WL 1218105, at *5 (C.D. Cal. Apr. 30, 2026) (citing *DraftKings I MTD II*, 2026 WL 746932, at *12) ("*Bill of Lading* did not hold that the knowledge gained from the filing of a complaint, standing alone, establishes the knowledge and intent required to plead induced infringement.").

of knowledge and intended infringement could be drawn based on "the context of the technology disclosed in the [] patent and the industry to which [defendants] sell and tout their products[.]" *Id.* at 1340. The industry at issue was the shipping/trucking industry, and the asserted patent was for a method of transferring shipping documentation data by scanning documents in the truck cab and transmitting them while the truck was *en route*, which was meant to improve asset utilization and efficiency. *Id.* at 1329, 1341. The court found it significant that the defendants advertised they, too, could "improve asset utilization and provide operational efficiency," even though there was no method by which to accomplish that outcome except through use of the plaintiff's patented method. *Id.* at 1341. As such, the *Bill of Lading* court concluded that "[c]ommon sense indicates that advertising that your product can be used [to accomplish the relevant benefits] gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method." *Id.* at 1341-42. As such, that court found the complaint gave defendants fair notice of the alleged infringement and reversed dismissal. *Id.* at 1342.

The SAC generally alleges that FanDuel advertises its products to customers, (*see* ECF No. 117 ¶¶ 85-90), but these allegations do not support a reasonable inference that FanDuel knew of the '543 and '988 patents or that it knew or should have known its conduct amounted to infringement of those patents pre-suit. (*Compare* ECF No. 117 ¶¶ 85-90 (alleging that "FanDuel encourages it[s] customers to use the Accused Products in the United States by providing new and existing customer promotions and incentives[,]" and that "FanDuel utilizes a variety of marketing channels" as well as "media, sports, and entertainment partnerships to promote customer usage of the Accused Products"), *with Bill of Lading*, 681 F.3d 1339 (holding that complaint sufficiently alleged defendants' knowledge of patents and infringement upon them in part because the defendants advertised that their products could perform functions only possible through use of the

27

plaintiff's patented technology).)  Further, unlike in *Bill of Lading*, although the SAC asserts that WinView's patents make "transformative advancements," (ECF No. 117 ¶¶ 24-38), the allegations do not lead the Court to infer that the methods claimed in the '543 and '988 patents are the *only* methods by which one could "enable a distributed entertainment system over a computing device . . . wherein the entertainment system is directly correlated to live events or televised programs," (ECF No. 117-1 at 2 (abstract of '543 patent)), or "conduct[] multiple competitions of skill for a single performance," (*id.* at 25 (abstract of '988 patent)).

The SAC's post-suit allegations of knowledge are also insufficient to plead a claim for relief.  As this Court has previously ruled, "this Court joins other district courts throughout the country that have determined that 'the complaint itself cannot be the source of the knowledge required to sustain claims of induced infringement and willfulness-based enhanced damages.'" *WinView Inc. v. DraftKings Inc. ("DraftKings I")*, Civ. No. 21-13405, 2025 WL 1908757, at *10 (D.N.J. July 11, 2025) (quoting *ZapFraud Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 250 (D. Del. 2021)); *see also id.* (collecting cases); *see also DraftKings I*, Civ. No. 21-13405, 2026 WL 746932, at *13 (D.N.J. Mar. 17, 2026) (same).  WinView's notice letter sent on July 25, 2025, (ECF No. 117 ¶ 111), does not change the Court's previous determination that the requisite knowledge cannot be inferred by or subsequent to the filing of a complaint.  *DraftKings I*, 2025 WL 1908757, at *10-11.  The Court agrees, like other courts have held, that "sending letters after the initial filing of the present action does not provide evidence of the requisite pre-suit knowledge for indirect infringement[.]"  *Secured Mail Sols., LLC v. Advanced Image Direct, LLC*, Civ. No. 12-01090, 2013 WL 8596579, at *9 (C.D. Cal. Jan. 30, 2013) (emphasis in original) (quoting *Proxyconn Inc. v. Microsoft Corp.*, Civ. No. 11-1681, 2012 WL 1835680, at *5 (C.D. Cal. May 16, 2012)).  Even considering the allegations in the SAC "as a whole," WinView fails to adequately

28

allege FanDuel's knowledge of the patents or alleged infringement for the reasons stated. *Novozymes N. Am., Inc.*, 2020 WL 12895027, at *2 ("[T]he Court need not evaluate whether each allegation, standing alone, gives rise to a reasonable inference that [defendant] had pre-suit knowledge of the patent.   Instead, the [c]ourt may consider the allegations as a whole."). Therefore, WinView's claims for willful infringement of the '543 and '988 patents are dismissed.

### C.      Indirect Patent Infringement

There are two types of indirect patent infringement: induced and contributory.  *InvenTel Prods., LLC v. Li*, 406 F. Supp. 3d 396, 404 (D.N.J. 2019).  FanDuel argues that WinView's claims for induced and contributory infringement for both the '543 and '988 patents should be dismissed as WinView has not pled the requisite knowledge of the patents or alleged infringement.  (ECF No. 126-1 at 25-29.)  The Court agrees.

Pursuant to 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  "Inducement requires a showing that the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent." *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009) (citing *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006)). Inducement also requires a showing of direct infringement.[14] *Aventis Pharms., Inc. v. Barr Lab'ys, Inc.*, 411 F. Supp. 2d 490, 515 (D.N.J. 2006).  Regarding intent, the Federal Circuit has recognized, "[i]ntent can be shown by circumstantial evidence, but the mere knowledge of possible infringement will not suffice." *Vita-Mix Corp.*, 581 F.3d at 1328.

---

[14]     Because the Court finds that WinView has sufficiently pled its claim of direct infringement for the '543 patent, *see supra* Section III.A, and FanDuel has not challenged WinView's claim for direct infringement for the '988 patent, this element is satisfied.

Contributory infringement is governed by 35 U.S.C. § 271(c). "Stated simply, '[a] party is liable for contributory infringement if that party sells, or offers to sell, a material or apparatus for use in practicing a patented process.'" *BTG Int'l Ltd. v. Amneal Pharm. LLC*, 352 F. Supp. 3d 352, 399 (D.N.J. 2018) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850-51 (Fed. Cir. 2010)). In order to establish contributory infringement, "a patent owner must prove the following: '1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'" *Id.* (quoting *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010)).

Both induced and contributory infringement require knowledge of the patent and knowledge of infringement, just like willful infringement. *See Dynamic Data Techs. v. Google LLC*, Civ. No. 19-1529, 2020 WL 1285852, at *1 n.1 (D. Del. Mar. 18, 2020), *report and recommendation adopted sub nom.*, *Dynamic Data Techs., LLC v. Google LLC*, Civ. No. 19-1529, 2020 WL 3103786 (D. Del. June 11, 2020) ("Claims for induced and willful patent infringement each require that the infringer had knowledge of the patent and knowledge of its infringement."); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) ("[C]ontributory infringement requires knowledge of the patent in suit and knowledge of patent infringement."); *ZapFraud*, 528 F. Supp. 3d at 249 ("Claims of indirect infringement . . . require proof that the defendant's conduct occurred after the defendant (1) knew of the existence of the asserted patent and (2) knew that a third party's acts constituted infringement of the patent. Claims for . . . willful infringement similarly require proof that the defendant knew about the asserted patents and knew or should have known that its conduct amounted to infringement of those patents.") (citations omitted). Again, the Court finds that the SAC fails to allege sufficient facts for the Court to infer FanDuel's

30

knowledge of the '543 or '988 patents or of its alleged infringement prior to the filing of the Complaint. FanDuel's knowledge cannot be established by or subsequent to the filing of a complaint.[15] *See, e.g.*, *ZapFraud*, 528 F. Supp. 3d at 250-52 ("[T]he operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit."). Because WinView has not alleged knowledge as is required for these counts, the Court need not proceed to analyze the parties' arguments regarding whether the SAC successfully alleges that FanDuel specifically intended to infringe (as is required for induced infringement) or whether WinView supplied a component that has no substantial non-infringing uses and is a material part of the invention (as is required for contributory infringement). WinView's claims of induced and contributory infringement of the '543 or '988 patents are dismissed.

### D.    Dismissal with Prejudice

Lastly, FanDuel argues that it is entitled to dismissal with prejudice because "[a]fter two rounds of amendments, WinView has had ample opportunity to come forward with facts supporting its claims" and WinView still failed to plead plausible claims. (ECF No. 123-1 at 29.)

---

[15]    WinView argues that because "there is no legal impediment to having an indirect infringement cause of action limited to post-litigation conduct," FanDuel's alleged infringement after its receipt of the Notice Letter is sufficient to progress this claim past the pleading stage. (ECF No. 126 at 28 (quoting *Telecomm Innovations, LLC v. Ricoh Co., Ltd.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013).) While other courts may be split on this issue, this Court has now repeatedly "reject[ed] WinView's argument that knowledge can be established based on the filing of the complaint and subsequent amendments," and held that "[b]ecause WinView has not alleged sufficient facts to show pre-suit knowledge of infringement, its claim for willful infringement based solely on post-suit knowledge cannot stand." *DraftKings I MTD I*, 2025 WL 1908757, at *10, *11; *see also DraftKings I MTD II*, 2026 WL 746932, at *14 n.13 (same). The Court again applies its finding to the indirect infringement context as well. *See also Secured Mail Sols., LLC*, 2013 WL 8596579, at *9.

31

FanDuel also notes that "the Court already dismissed an amended complaint in *DraftKings I* [] that is similarly worded to the [S]AC in this case—with analogous pleading deficiencies" and any further amendment would be futile. (*Id.* at 29-30.) WinView counters that it "will provide these detailed allegations in its infringement contentions once discovery begins" or should be given leave to amend the SAC. (ECF No. 126 at 33.)

In its prior Opinion in *DraftKings I*, an Opinion WinView cites numerous times in its briefing, (*see* ECF No. 126 at 20-21, 24, 25, 28), and was filed months before the SAC in this case, the Court stated that while WinView "is required to provide detailed information regarding alleged claims being infringed upon after the initial scheduling conference, the Local Patent Rules do not relinquish WinView from its obligation to allege facts in accordance with [] Rule 12(b)(6)." 2025 WL 1908757, at *8 n.10. In that same Opinion, this Court extensively described the deficiencies to be remedied in dismissing WinView's complaint in that case, most of which are also present in the SAC herein that brings the same claims. *See generally DraftKings I*, 2025 WL 1908757.

"Courts have discretion to dismiss complaints with prejudice after 'repeated failures to cure the deficienc[ies] by amendments previously allowed.'" *Pryce v. PrimeCare Med.*, Civ. No. 21-753, 2024 WL 3761733, at *5 (E.D. Pa. Aug. 12, 2024) (quoting *Stovall v. Grazioli*, Civ. No. 20-2041, 2023 WL 3116439, at *3 (3d Cir. Apr. 27, 2023)), *aff'd as modified*, Civ. No. 24-2685, 2025 WL 1293077 (3d Cir. May 5, 2025). The SAC, which was intended to "provid[e] further factual allegations as to FanDuel's infringement of the '543 and '988 Patents, willful infringement, and indirect infringement," remains deficient. (ECF No. 115-1 at 5.) "While leave to amend must be freely given when justice so requires, leave may be denied where amendment would be futile." *Pacira Biosciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc.*, 583 F. Supp. 3d 654, 662 (D.N.J. 2022), *aff'd*, 63 F.4th 240 (3d Cir. 2023). Given the Court's repeated holdings that knowledge

necessary for claims of willful and indirect infringement cannot be established based on the filing of a complaint and subsequent communications, *DraftKings I*, 2025 WL 1908757, at *10-11, *12; *DraftKings I*, 2026 WL 746932, at *13, *14, and the dearth of allegations regarding FanDuel's knowledge of the patents or alleged infringement after the patents' issuance and before the filing of this lawsuit, amendment would be futile,[16] *see Kennedy v. Envoy Airlines Inc.*, Civ. No. 15-8058, 2018 WL 895871, at *6 (D.N.J. Feb. 14, 2018), *aff'd sub nom. Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136 (3d Cir. 2019) ("Allowing leave to amend where there is a stark absence of any suggestion by the plaintiffs that they have developed any facts since the action was commenced . . . would frustrate Congress's objective to filter out lawsuits that have no factual basis." (quoting *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 164 (3d Cir. 2004))) (internal quotations omitted); *Lelina v. 1st 2nd Mortg. Co. of NJ*, Civ. No. 11-05517, 2012 WL 3079185, at *6 (D.N.J. July 30, 2012) (dismissing complaint as it presented identical claims and nearly identical factual allegations to those raised in prior cases, which had been dismissed as they failed to state a claim upon which relief might be granted); *Karupaiyan v. Shalimar Grp. of Rests.*, Civ. No. 23-844, 2023

---

[16] The parties' arguments and briefs in this matter are nearly identical to those made and considered by this Court upon a Motion to Dismiss in a parallel case brought by WinView against a similar gaming company defendant, *DraftKings I*, Civ. No. 21-13405. *Compare* Brief in Support of Defendants' Motion to Dismiss, *DraftKings I*, Civ. No. 21-13405 (D.N.J. Sep. 26, 2025), Dkt. No. 109-1, *with* Brief in Support of Defendants' Motion to Dismiss, *WinView IP Holdings, Inc. v. FanDuel, Inc. ("FanDuel I")*, Civ. No. 21-13807, (D.N.J. Dec. 12, 2025), Dkt. 123-1; *compare* Winview IP Holdings, LLC's Opposition to Defendants' Motion to Dismiss, *DraftKings I*, Civ. No. 21-13405 (D.N.J. Oct. 20, 2025), Dkt. No. 119, *with* WinView IP Holdings, LLC's Opposition to Defendants' Motion to Dismiss, *FanDuel I*¸ Civ. No. 21-13807, (D.N.J. Dec. 22, 2025), Dkt. 126; *compare* Reply Brief in Support of Defendants' Motion to Dismiss, *DraftKings I*, Civ. No. 21-13405 (D.N.J. Oct. 27, 2025), Dkt. No. 121, *with* Reply Brief in Support of Defendants' Motion to Dismiss, *FanDuel I*¸ Civ. No. 21-13807, (D.N.J. Jan. 13, 2025), Dkt. 127. *See also DraftKings I*, 2026 WL 746932. And after the Court's ruling today, the same infringement claims remain in both cases. Going forward, the Court notes that it has broad discretion to consolidate like matters *sua sponte*, even when "there is not a perfect overlap in parties." *Grivas v. Sorace*, Civ. No. 24-6923, 2025 WL 1795113, at *4 (E.D. Pa. June 30, 2025).

WL 2367631, at *2 (D.N.J. Mar. 6, 2023), *aff'd as modified on other grounds sub nom. Karupaiyan v. Shalimar Grp. of Rests.*, Civ. No. 23-1788, 2024 WL 3811621 (3d Cir. Aug. 14, 2024) (dismissing plaintiff's complaint in part because "this Court has previously dismissed iterations of a substantively identical complaint filed by [the p]laintiff in 2020"). Therefore, the Court's dismissal of WinView's willful infringement and indirect infringement claims is with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, and other good cause shown, FanDuel's Motion to Dismiss the SAC (ECF No. 123) is **GRANTED in part** and **DENIED in part**. An appropriate Order follows.

Dated: June 9, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

34